# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT P. STORCH; MICHAEL MISSAL;
CHRISTI A. GRIMM; CARDELL K.
RICHARDSON, SR.; SANDRA D. BRUCE;
PHYLLIS K. FONG; LARRY D. TURNER;
HANNIBAL "MIKE" WARE;

                           Plaintiffs,

        v.

PETE HEGSETH, *in his official capacity as Secretary of Defense*; DOUGLAS A. COLLINS, *in his official capacity as Secretary of Veterans Affairs*; ROBERT F. KENNEDY, JR., *in his official capacity as Secretary of Health and Human Services*; MARCO RUBIO, *in his official capacity as Secretary of State*; DENISE L. CARTER, *in her official capacity as Acting* Secretary *of Education*; GARY WASHINGTON, *in his official capacity as Acting Secretary of Agriculture*; VINCENT MICONE, *in his official capacity as Acting Secretary of Labor*; EVERETT M. WOODEL, JR., *in his official capacity as Acting Administrator of the Small Business Administration*; DONALD J. TRUMP, *in his official capacity as President of the United States*;

                           Defendants.

Civil Case No. 1:25-cv-00415-ACR

# PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND MEMORANDUM IN SUPPORT OF SAME

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT .................................................................................................................... 3

    A.    The Office Of Inspector General ............................................................... 3

    B.    President Trump's Purported Removals Of Plaintiffs As Inspectors General ...................................................................................................... 6

LEGAL STANDARD ........................................................................................................ 9

ARGUMENT ................................................................................................................... 10

I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ........................................ 10

    A.    President Trump's Purported Removals Violate 5 U.S.C. §403(b) And Thus Are Legal Nullities .......................................................................... 10

    B.    The Agency Defendants Unlawfully Impeded Plaintiffs' Discharge Of Their Duties As IGs ................................................................................. 11

    C.    Plaintiffs Are Likely To Prove An Entitlement To Relief .................................. 12

        1.    Administrative Procedure Act (Count I) ..................................... 12

        2.    *Ultra Vires* (Count II) ................................................................ 13

        3.    Mandamus (Count III) ................................................................ 14

    D.    The IG Act's Removal Procedures Are Constitutional ......................... 14

II.    PLAINTIFFS WILL LIKELY SUFFER IRREPARABLE HARM IF PRELIMINARY RELIEF IS DENIED . 18

III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT ISSUANCE OF PRELIMINARY RELIEF .......................................................................................................... 19

CONCLUSION .............................................................................................................. 21

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aid Association for Lutherans v. U.S. Postal Service*, 321 F.3d 1166 (D.C. Cir. 2003) ..............13

*American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902) ..................................13

*Archdiocese of Washington v. Washington Metropolitan Area Transit Authority*,
    897 F.3d 314 (D.C. Cir. 2018) .......................................................................................................9

*Berry v. Reagan*, 1983 WL 538 (D.D.C. Nov. 14, 1983) ......................................................18, 19

*Buckley v. Valeo*, 424 U.S. 1 (1976) ...........................................................................................15

*Carlson v. Wilkie*, 2021 WL 9455359 (S.D. Iowa Jan. 29, 2021) ...............................................12

*Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)..................................................13

*Dellinger v. Bessent*, 2025 WL 471022 (D.D.C. Feb. 12, 2025)...........................................10, 18

*Edmond v. United States*, 520 U.S. 651 (1997) .........................................................................16

*Financial Oversight & Management Board for Puerto Rico v. Aurelius Investment, LLC*,
    590 U.S. 448 (2020)........................................................................................................................15

*Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S.
    477 (2010)..................................................................................................................................15, 17

*Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023) .......................................................................14

*Jefferson v. Harris*, 170 F.Supp.3d 194 (D.D.C. 2016)................................................................12

*Jones v. District of Columbia*, 177 F.Supp.3d 542 (D.D.C. 2016) ...............................................19

*League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ...................................................9

*Lucia v. Securities & Exchange Commission*, 585 U.S. 237 (2018) ............................................15

*Mackie v. Bush*, 809 F.Supp. 144 (D.D.C. 1993) .......................................................................18

*Marbury v. Madison*, 5 U.S. 137 (1803)......................................................................................11

*McElrath v. United States*, 102 U.S. 426 (1880) ........................................................................11

*Medellin v. Texas*, 552 U.S. 491 (2008) .....................................................................................13

*Morgan Stanley DW Inc. v. Rothe*, 150 F.Supp.2d 67 (D.D.C. 2001)..........................................10

*Morrison v. Olson*, 487 U.S. 654 (1988) ...................................................................16

*Myers v. United States*, 272 U.S. 52 (1926)...............................................................14

*NASA v. Federal Labor Relations Authority*, 527 U.S. 229 (1999).............................20

*Pursuing America's Greatness v. Federal Election Commission*, 831 F.3d 500
    (D.C. Cir. 2016) ...................................................................................................10

*Sampson v. Murray*, 415 U.S. 61 (1974) ...................................................................19

*Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020) ............14, 16, 17

*Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971).......................................................13

*Trudeau v. Federal Trade Commission*, 384 F.Supp.2d 281 (D.D.C. 2005)................19

*Walpin v. Corporation for National & Community Services*, 630 F.3d 184 (D.C.
    Cir. 2011) ............................................................................................................18

*Youngstown Sheet & Tube Company v. Sawyer*, 343 U.S. 579 (1952)..........................13

## STATUTES, RULES, AND REGULATIONS

5 U.S.C.
        §402....................................................................................................................4
        §403............................................................................................................*passim*
        §404..............................................................................................3, 15, 16, 17, 20
        §406..................................................................................................................15
        §702..................................................................................................................12
        §6329b.............................................................................................................6, 16

28 U.S.C. §1361 .......................................................................................................14

Federal Rule of Civil Procedure 65(a)(2) ...................................................................22

Inspector General Act ......................................................................................*passim*

Inspector General Reform Act ......................................................................................6

## OTHER AUTHORITIES

Garvey, Todd, Congressional Research Service, R46762, *Congress's Authority to
    Limit the Removal of Inspectors General* (Apr. 16, 2021),
      https://crsreports.congress.gov/product/pdf/R/R46762 ....................................16

Hansler, Jennifer, *USAID IG Fired Day After Report Critical of Impacts of Trump Administration's Dismantling of the Agency*, CNN (Feb. 11, 2025), https://www.cnn.com/2025/02/11/politics/usaid-inspector-general-fired-trump/index.html .......................................................................................................1

Letter from Senators Grassley & Durbin to President Trump (Jan. 28, 2025), https://www.grassley.senate.gov/imo/media/doc/grassley_durbin_to_djt_-_ig_removals.pdf ....................................................................................................7

Council of the Inspectors General for Integrity and Efficiency, Annual Report to the President and Congress: *Fiscal Year 2023*, (Mar. 19, 2024), https://www.ignet.gov/sites/default/files/files/CIGIEAnnualReporttothePresidentFY2023_FINAL.pdf...........................................................................................20

Senate Report No. 110-262 (2008) ...................................................................................6

## INTRODUCTION

Late in the day on Friday, January 24, 2025, President Donald Trump purported to remove *en masse* seventeen of the most experienced inspectors general (IGs) in the U.S. government, via a set of identical, two-sentence emails sent by White House staff.  This attempted purge targeted all but two of the cabinet agencies' IGs—non-partisan watchdogs who are meant to root out waste, fraud, and abuse in government.  (Since then, President Trump has purported to remove yet another IG via email.  *See* Hansler, *USAID IG Fired Day After Report Critical of Impacts of Trump Administration's Dismantling of the Agency*, CNN (Feb. 11, 2025).[1])  The emails to the IGs, eight of whom are plaintiffs here, came with no warning, notice to Congress, or public announcement, and each stated simply that the recipient's "position" had been terminated, effective immediately, due to "changing priorities," *infra* pp.6-7

These purported terminations violate the plain language of a federal statute—one enacted with bipartisan support in Congress and signed into law by the President.  Specifically, the Inspector General Act (IG Act) unambiguously provides that an IG may be removed only "by the President," who must first (1) notify Congress about a planned removal at least 30 days before it occurs and (2) provide a substantive, case-specific rationale for the termination.  5 U.S.C. §403(b).[2]  The purported removal of plaintiffs from their positions was done, as noted, without any such notice, and without any rationale being provided.  Each removal is therefore a nullity.  The head of each affected agency, moreover, has since taken actions at the President's direction to effectuate the purported removals, thereby illegally interfering with plaintiffs' conduct of the official duties each was nominated by the President and confirmed by the Senate to perform.

---

[1] https://www.cnn.com/2025/02/11/politics/usaid-inspector-general-fired-trump/index.html.

[2] This statutory provision was not recodified following the 2022 amendments, which are reflected at Public Law No. 117-286, §3(b), 136 Stat. 4208 (2022).

1

Plaintiffs—IGs at the Departments of Defense, Veterans Affairs, Health and Human Services, State, Agriculture, Education, and Labor, and the Small Business Administration—brought this action to challenge their purported removal. They now move this Court for a temporary restraining order and preliminary injunction to prevent defendants' illegal interference with their official duties. Applying the relevant factors makes clear that such relief is warranted.

For starters, because the purported firings manifestly violate the IG Act—there is no non-frivolous argument to the contrary—plaintiffs are likely to succeed on the merits of their claims. Although defendants may claim that the IG Act infringes the President's removal authority under Article II, any such claim would fail. Inspectors General are not "Officers of the United States" within the meaning of Article II and Supreme Court jurisprudence. In any event, the Act's notice requirements are exceedingly modest: They do not prevent the President from removal any IG, or even from placing an IG on non-duty *immediately* if circumstances warrant. They merely give Congress the basis for an intended removal (a basis that need not rise to "cause") and a short period to decide whether to weigh in with the President (or otherwise act) before he disrupts the vital oversight functions performed by these non-partisan watchdogs. These limited but vital provisions concerning officials who are not heads of their cabinet-level agencies—but whose work provide enormous benefits to the nation—do not violate Article II.

The other factors relevant to preliminary relief likewise support granting this motion. Without such relief, the IGs' statutory functions will be irreparably disrupted—and as courts in this district have recognized, that harm supports preliminary relief where, as here, the mass removal of Senate-confirmed officials undermines the statutory function those officials are charged with executing. Indeed, allowing the purported removals to stand would fundamentally undermine

the work of IGs as non-partisan watchdogs, precluding Congress's, the Executive's, and the public's effective oversight of federal programs that the IG Act requires.

Finally, the balance of equities and the public interest (two factors that merge when the government is the opposing party) favor preliminary relief. Defendants will suffer no cognizable harm from being directed to allow plaintiffs to provide further benefits to the public by continuing their longtime work of detecting and preventing waste, fraud, and abuse in government. And those benefits confirm that the public interest supports granting plaintiffs' motion. Indeed, the public has a paramount interest in preserving government integrity, in maintaining transparency and oversight of federal spending and public administration, and in achieving accountability for waste, fraud, and abuse. Plaintiffs are uniquely capable of furthering all those objectives, i.e., uniquely capable of providing benefits to the public, because they have long served in government agencies, have developed deep relationships and substantive knowledge about their agencies' operations, and are experienced investigators, auditors, program evaluators, and attorneys. Congress's bipartisan enactment of these provisions, which were signed into law by various Presidents, leaves no doubt that honoring these provisions of federal law is unambiguously in the public interest. In short, the public has a significant interest in preliminary relief that would allow plaintiffs to continue performing their vital, non-partisan work.

## STATEMENT

### A.     The Office Of Inspector General

Inspectors General are appointed by the President with the advice and consent of the Senate. IGs help ensure the effective and efficient operation of government. *See* 5 U.S.C. §404(a). They do so by auditing and investigating their agencies' operations and personnel to detect and prevent waste, fraud, and abuse. *Id.* IGs draw findings and recommendations from these oversight activities, which agency leaders and Congress can draw on to improve agency operations. Compl.

¶¶2-3, 43-54; Waxman Decl. ¶3 & Ex.A.  They are not principal officers or the heads of the agencies in which they work; instead, they are subject to "general supervision" by the heads of their respective agencies.  5 U.S.C. §403(a).

Congress has adopted, and over time strengthened, clear statutory protections to maintain the integrity and value of IG oversight.  In 1978, for example—after decades in which it created IGs for individual agencies as it identified a need, Compl. ¶45—Congress enacted the Inspector General Act on a bipartisan basis to "promote economy, efficiency, and effectiveness" and "prevent and detect fraud and abuse" within cabinet departments and major federal agencies, *id.* ¶¶45-47; 5 U.S.C. §402(b)(2)(A).  Since 1978, Congress has amended the IG Act several times (each amendment signed into law by the President) to establish IGs for additional federal agencies and to further enhance and empower IGs by increasing budget appropriations for the Offices of Inspector General.  Compl. ¶58.

To ensure that IGs work in a scrupulously non-partisan manner, the IG Act requires that IGs be appointed "without regard to political affiliation and solely on the basis of integrity and demonstrated ability in accounting, auditing, financial analysis, law, management analysis, public administration, or investigations."  5 U.S.C. §403(a).  And reflecting Congress' judgment (presumably shared by the Presidents that signed the bill and its amendments into law) that IGs cannot provide effective oversight if they are unduly beholden to the agencies they investigate, the IG Act provides that IGs may not be supervised by anyone at their agencies other than the agency head or "the officer next in rank below such head."  *Id.*  Congress also mandated that IGs' supervising official "shall [not] prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation, or from issuing any subpoena during the course of any audit or investigation."  *Id.*

These protections, designed both to safeguard the integrity and effectiveness of the IGs and to minimize interference with or disruption of their work, include procedures regarding IGs' removal. In the last four-plus decades—since President Reagan fired 16 Inspectors General upon taking office, only to reinstate five of them after robust bipartisan criticism that the firings politicized these crucial apolitical posts, Compl. ¶60—no incoming president has attempted upon taking office to remove *en masse* IGs appointed by his predecessors. *Id.* Rather, IGs—including plaintiffs—have for decades served across presidential administrations, reflecting their role as non-partisan watchdogs. Compl. ¶2. For example, plaintiff Phyllis Fong has served as IG of the U.S. Department of Agriculture (USDA) since 2002—spanning the presidencies of two Republicans (George W. Bush and Donald Trump) and two Democrats (Barack Obama and Joe Biden). *Id.* ¶24; Fong Decl. ¶1. In total, three of the eight plaintiffs' service has spanned at least one change of control between Presidents of different parties, prior to President Trump's second term, and three more served in acting IG capacities under President Trump before their nomination by President Biden and confirmation by the Senate.

When President Trump in his first term departed from this long bipartisan tradition—dismissing two confirmed IGs who had examined issues related President Trump's first impeachment—Congress acted again to bolster IGs' protections. Compl. ¶62. As amended in 2022, the IG Act provides that the President may remove an IG if he communicates to Congress in writing a substantive, case-specific rationale for the termination (which as noted need not rise to the level of "for cause") at least 30 days in advance. 5 U.S.C. §403(b)(2)(B). Moreover, an IG may not be prevented from carrying out official functions (i.e., may not be "place[d] … on non-duty-status") during the 30-day period preceding the date of their removal unless the President makes a reasoned determination that the IG's continued presence "poses a threat" to the workplace.

*Id.*; *see also id.* §6329b(b)(2)(A).[3]  The legislative history of the Inspector General Reform Act indicates that Congress added the notice requirement to "allow for an appropriate dialogue with Congress in the event that the planned transfer or removal is viewed as an inappropriate or politically motivated attempt to terminate an effective Inspector General."  *See* S. Rep. No. 110-262, at 4 (2008).

### B.    Defendant Trump's Purported Removals Of Plaintiffs As Inspectors General

Plaintiffs have served as Inspectors General of their respective agencies for as many as 23 years.  Compl. ¶¶15, 17-18, 20, 22, 24, 26, 28; Fong Decl. ¶1; Storch Decl. ¶1; Missal Decl. ¶1; Grimm Decl. ¶1; Turner Decl. ¶1; Ware Decl. ¶1; Richardson Decl. ¶1; Bruce Decl. ¶1.  Plaintiffs were appointed by both Democratic and Republican presidents and each confirmed by the Senate. Compl. ¶¶15, 17-18, 20, 22, 24, 26, 28; Fong Decl. ¶1; Storch Decl. ¶1; Missal Decl. ¶1; Grimm Decl. ¶1; Turner Decl. ¶1; Ware Decl. ¶1; Richardson Decl. ¶1; Bruce Decl. ¶1.  Each has also spent decades serving the public in other roles, including in other oversight positions at their current and other agencies, *e.g.*, Compl. ¶¶23-24 (Energy IG Bruce, USDA IG Fong); as prosecutors, *e.g.*, *id.* ¶16 (Defense IG Storch); and as leaders in the military, *e.g.*, *id.* ¶¶20, 27 (State IG Richardson, Labor IG Turner).

On the evening of Friday, January 24, 2025, each plaintiff received an email from the director or deputy director of the Office of Presidential Personnel purporting to immediately remove him or her as IG.  *See* Compl. ¶71.  For example, Phyllis Fong received the following email:

---

[3] The IG Act does not define "non-duty status," but refers to the requirements for "employee in leave" in 5 U.S.C. §6329b(b)(2)(A).

**From:**      Gor, Sergio N.
**Sent:**      Friday, January 24, 2025 7:37 PM
**To:**        FONG, PHYLLIS
**Subject:**   White House Notification

Dear Phyllis,

On behalf of President Donald J. Trump, I am writing to inform you that due to changing priorities your position as Inspector General of the United States Department of Agriculture is terminated, effective immediately.

Thank you for your service.

--
Sergio Gor
Director of Presidential Personnel
The White House

*Id.* ¶72; Fong Decl. ¶6.  None of these emails articulated any rationale for the removal beyond the allusion to "changing priorities."  *See* Compl. ¶¶71-72; Fong Decl. ¶6; Storch Decl. ¶8; Missal Decl. ¶8; Grimm Decl. ¶8; Turner Decl. ¶6; Ware Decl. ¶7; Richardson Decl. ¶9; Bruce Decl. ¶7. No plaintiff has received any direct communication from President Trump regarding the purported removals.  Compl. ¶73; Fong Decl. ¶6; Storch Decl. ¶8; Missal Decl. ¶9; Grimm Decl. ¶8; Turner Decl. ¶¶6-8; Ware Decl. ¶¶7-9; Richardson Decl. ¶10; Bruce Decl. ¶8.

Nor did President Trump give Congress notice that he intended to remove any of the IGs, let alone the statutorily required 30-day notice and case-specific reasons for removal.  Compl. ¶74; 5 U.S.C. §403(b).  Hence, shortly after the purported removals, Senate Judiciary Committee Chair Charles Grassley (R-Iowa) and Ranking Member Richard Durbin (D-Ill.) jointly wrote to President Trump that "Congress was not provided the legally required 30-day notice and case-specific reasons for removal, as required by law" and "request[ed] that [President Trump] provide that information immediately."  Letter from Senators Grassley & Durbin to President Trump (Jan. 28,

2025), *cited in* Compl. ¶79.[4]   The letter emphasized that the removals affected "public and congressional accountability and … the public's confidence in the Inspector General community," because "IGs are critical to rooting out waste, fraud, abuse, and misconduct within Executive Branch bureaucracy."  *Id.*  Several other members of Congress also wrote their own letters urging the reinstatement of one or more plaintiffs.  Compl. ¶79; Waxman Decl. ¶2 & Ex.B.

President Trump's only public statement to date regarding the purported removals came during an informal press briefing on January 25, 2025, when he conceded that "I don't know [the IGs]" but asserted that "some people thought that some were unfair, some were not doing their job."  Compl. ¶¶8, 74; Waxman Decl. ¶3 & Ex.C.  He did not identify who supposedly "thought" these things about any IG in particular, or specify how the unidentified IGs supposedly "were not doing their job."  Compl. ¶74; Waxman Decl. ¶3 & Ex.C.  And despite the fact that presidents of both major political parties have for decades uniformly refrained from removing IGs upon taking office, *supra* p.5, President Trump falsely asserted that the immediate removals were "a very standard thing to do," Compl. ¶¶8, 74; Waxman Decl. ¶3 & Ex.B.[5]

---

[4] https://www.grassley.senate.gov/imo/media/doc/grassley_durbin_to_djt_-_ig_removals.pdf.

[5] As mentioned, in addition to the prohibition on removing an IG before the statutory notice period has expired, the statute also addresses the placement of an IG on "non-duty status" prior to removal:  A President seeking to remove an IG "may not" place the IG on non-duty status during the 30-day notice period unless he "has made a determination that the continued presence of the Inspector General in the workplace poses a threat" as defined by statute, and provides a "report" to Congress specifying "the substantive rationale, including detailed and case-specific reasons for the [threat] determination," along with other required information about the investigation supporting the determination.  *Id.* §403(b)(2)(C).  Typically, even then the President may do so only after giving 15 days' notice to Congress, *id.* §403(b)(2)(B), although he may dispense with the 15-days' notice if he communicates to Congress a "substantive" determination that the "continued presence of the Inspector General in the workplaces poses a threat," *id.*  The provisions regarding non-duty status are not at issue here.  *See* Compl. ¶75.

Although President Trump's purported removals failed to comply with the IG Act, in the days following the emails purporting to remove plaintiffs from office, employees at plaintiffs' agencies prevented plaintiffs from performing their IG duties:  The employees cut off plaintiffs' access to government systems, confiscated plaintiffs' government equipment—including computers, phones, and access badges—and directed certain plaintiffs to collect, under supervision, their personal belongings from government buildings.  Compl. ¶76; Fong Decl. ¶¶9-12; Storch Decl. ¶¶9-10; Missal Decl. ¶¶10-11; Grimm Decl. ¶¶9-10; Turner Decl. ¶¶7-8; Ware Decl. ¶¶10-11; Richardson Decl. ¶¶11-13; Bruce Decl. ¶¶9-11.

Plaintiffs have disputed the legality of their purported removals.  For example, plaintiff Mike Ware, in his capacity as Chairperson for the Council of the Inspectors General for Integrity and Efficiency (CIGIE), wrote in a letter to the Office of Presidential Personnel that the purported removals were illegal and therefore a nullity.  Compl. ¶6; Ware Decl. ¶8.  (The Office of Presidential Personnel never responded.  Ware Decl. ¶9.)  And Phyllis Fong attempted to continue working after receiving Gor's email.  Compl. ¶77; Fong Decl. ¶¶9-10.  On January 27, 2025, she returned to work and conducted several meetings before USDA employees cut off her access to IT systems, took possession of her computer and phone, and deactivated her badge, despite her nearly 23 years of decorated service as USDA IG.  Compl. ¶77; Fong Decl. ¶¶1, 9-10.

## LEGAL STANDARD

To obtain a preliminary injunction, "[t]he moving party must make a 'clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest.'"  *Archdiocese of Washington v. Washington Metropolitan Area Transit Authority*, 897 F.3d 314, 321 (D.C. Cir. 2018) (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016)).  "'The court considers the same factors in ruling on a motion for a temporary

restraining order.'" *Dellinger v. Bessent*, 2025 WL 471022, at *4 (D.D.C. Feb. 12, 2025) (quoting *Morgan Stanley DW Inc. v. Rothe*, 150 F.Supp.2d 67, 72 (D.D.C. 2001)).  Where the government is a party to the suit, the last two factors merge.  *See Pursuing America's Greatness v. Federal Election Commission*, 831 F.3d 500, 511 (D.C. Cir. 2016).

## ARGUMENT

### I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Plaintiffs will likely prevail on their claims, which are all based on the same predicate: They were unlawfully removed from office in violation of 5 U.S.C. §403(b).

### A.   President Trump's Purported Removals Violate 5 U.S.C. §403(b) And Thus Are Legal Nullities

The IG Act (as amended) establishes simple procedural requirements for the removal of IGs:

> An Inspector General may be removed from office by the President. If an Inspector General is removed from office or is transferred to another position …, the President shall communicate in writing the substantive rationale, including detailed and case-specific reasons for any such removal or transfer to both Houses of Congress (including to the appropriate congressional committees), not later than 30 days before the removal or transfer.  Nothing in this subsection shall prohibit a personnel action otherwise authorized by law, other than transfer or removal.

5 U.S.C. §403(b).

Plaintiffs will prevail if even one of the foregoing requirements was not complied with.  In fact, plaintiffs will likely show that not one of them was satisfied.  Indeed, the non-compliance with each requirement is beyond plausible dispute.

- President Trump did not provide Congress with 30 days' notice prior to any of the purported removals.

- President Trump has not communicated to Congress in writing (or otherwise) any case-specific reason for any of the purported removals.[6]

### B.    The Agency Defendants Unlawfully Impeded Plaintiffs' Discharge Of Their Duties As IGs

Plaintiffs are also likely to succeed on their claim that the actions of the Agency Defendants—i.e., the defendants other than President Trump—are unlawfully impeding plaintiffs from discharging their IG duties in violation of 5 U.S.C. §403(b).

Following plaintiffs' receipt of the emails purporting to remove them, the Agency Defendants proceeded to effectuate the purported removals by preventing plaintiffs from performing their IG duties. In particular, the Agency Defendants directed their subordinates to cut off plaintiffs' access to their government email accounts and computer systems, to confiscate plaintiffs' other government equipment, to remove plaintiffs from the federal payroll, and to bar plaintiffs from accessing their offices (except to collect, under supervision, their personal belongings). Compl. ¶76; Fong Decl. ¶¶9-12; Storch Decl. ¶¶9-10; Missal Decl. ¶¶10-11; Grimm Decl. ¶¶9-10; Turner Decl. ¶¶7-8; Ware Decl. ¶10; Richardson Decl. ¶¶11-13; Bruce Decl. ¶¶9-11.

---

[6] The January 24 emails purporting to remove plaintiffs also do not constitute official actions "by the President," 5 U.S.C. §403(b), yet another violation of the IG Act. The Supreme Court has long recognized that "[t]here are, undoubtedly, official acts which the Constitution and laws require to be performed by the President personally, and the performance of which may not be delegated to heads of departments, or to other officers in the executive branch of the government." *McElrath v. United States*, 102 U.S. 426, 436 (1880); *see also Marbury v. Madison*, 5 U.S. 137, 157 (1803). The IG Act states that an IG may be removed "by the President," *see* 5 U.S.C. §403(b), and there is no textual authorization for the delegation of that removal power. To the contrary, the mandate in the same provision that "only the President may place an Inspector General on non-duty status," *id.*, makes clear the non-delegable nature of the powers at issue. That is confirmed by the fact that no statute, regulation, or executive order vests the Office of Presidential Personnel with any authority over the removal of IGs. And the e-mails to plaintiffs purporting to remove them from office lack any sufficient indicia of personal presidential approval: They do not attach any document signed by President Trump, any document purporting to come from the President's office, or even any document on the President's letterhead. The emails thus do not satisfy the statutory requirement of IG removal "by the President."

Indeed, after Phyllis Fong entered her office on January 27 to continue her nearly 23-year tenure as USDA IG, Acting Secretary of Agriculture Gary Washington and his staff purposely directed that her access to her government e-mail account and computer systems be cut off, as well as her access to the building. Compl. ¶77; Fong Decl. ¶¶1, 9-10. All this conduct was unlawful because plaintiffs had not been properly removed, meaning they remained (and remain) presidentially appointed and Senate-confirmed officials entitled to perform their duties.

### C.    Plaintiffs Are Likely To Prove An Entitlement To Relief

Based on the foregoing violations, plaintiffs will prove that they are entitled to relief against defendants on each claim in the complaint.

### 1.    Administrative Procedure Act (Count I)

The Administrative Procedure Act (APA) provides that a "person suffering legal wrong because of agency action" is entitled to judicial review. 5 U.S.C. §702; *see also id.* §704. It further provides that courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* §706(2)(A), and any action taken "without observance of procedure required by law," *id.* §706(2)(D).

Plaintiffs have suffered a "legal wrong"—removal in violation of 5 U.S.C. §403(b)—because of final "agency action," namely the Agency Defendants' effectuating plaintiffs' purported termination. As described in section II.B, the Agency Defendants and their representatives have prevented plaintiffs from fulfilling their official duties. Compl. ¶¶76-77. This amounts to constructive termination of plaintiffs. And as this Court has recognized, it is "plausible" that "constructive discharge" constitutes a "final agency action" subject to judicial review. *Jefferson v. Harris*, 170 F.Supp.3d 194, 219 (D.D.C. 2016); *see also Carlson v. Wilkie*, 2021 WL 9455359, 2021 WL 9455359, at *4 (S.D. Iowa Jan. 29, 2021). That Agency Defendants' actions are "based on the President's" actions, moreover, does not "insulate them from judicial review under the

APA." *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996). In short, the Agency Defendants' unlawful final agency action will likely warrant relief from this Court under the APA.

### 2.    *Ultra Vires* (Count II)

Plaintiffs are also likely to show that President Trump has acted *ultra vires* in purporting to remove them as IGs. "The President's authority to act … 'must stem either from an act of Congress or from the Constitution itself.'" *Medellin v. Texas*, 552 U.S. 491, 523 (2008) (quoting *Youngstown Sheet & Tube Company v. Sawyer*, 343 U.S. 579, 585 (1952)). And a President acts in excess of his statutory authority where his orders conflict with a federal statute. *See Chamber of Commerce*, 74 F.3d at 1332. Here, to the extent the purported terminations are attributable to President Trump, he violated the removal procedures in the IG Act by failing to provide Congress 30 days' notice or to communicate a substantive, case-specific rationale. These *ultra vires* actions are without legal force or effect.

The Agency Defendants likewise acted *ultra vires* in effectuating plaintiffs' purported removal and preventing plaintiffs from fulfilling their official duties. "Even if the Secretary were acting at the behest of the President, this 'does not leave the courts without power to review the legality [of the action], for courts have power to compel subordinate executive officials to disobey illegal Presidential commands.'" *Chamber of Commerce*, 74 F.3d at 1328 (alteration in original) (quoting *Soucie v. David*, 448 F.2d 1067, 1072 n.12 (D.C. Cir. 1971)); *see also American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 108 (1902). And "the case law in this circuit is clear that judicial review is available when an agency acts *ultra vires*." *Aid Association for Lutherans v. U.S. Postal Service*, 321 F.3d 1166, 1173 (D.C. Cir. 2003). Nor does the APA's enactment "repeal the review of *ultra vires* action recognized long before." *Chamber of Commerce*, 74 F.3d at 1328. Put simply, by implementing President Trump's *ultra vires* removal of plaintiffs, the Agency Defendants themselves acted *ultra vires*.

### 3.    Mandamus (Count III)

Alternatively, plaintiffs are entitled to mandamus relief.  This Court has mandamus jurisdiction "to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. §1361.  And mandamus lies where a plaintiff shows (1) a clear right to relief, (2) that the defendant has a clear non-discretionary duty to act, and (3) that there is no other remedy available to plaintiff.  *See Illinois v. Ferriero*, 60 F.4th 704, 714-715 (D.C. Cir. 2023).  Each requirement is met here:  First, plaintiffs have a clear right to remain in office unless and until the statutory requirements for removal have been satisfied, so they are entitled to a writ of mandamus compelling defendants not to obstruct plaintiffs in their exercise of IG duties. Second, President Trump failed to follow the IG Act's 30-day notice and rationale requirements, and Agency Defendants have effectuated President Trump's unlawful act by preventing plaintiffs from carrying out their official IG duties and ceasing payment to plaintiffs for this work.  Thus, if no other remedy were available to plaintiffs, mandamus is a proper remedy.

### D.    The IG Act's Removal Procedures Are Constitutional

Any argument that the IG Act's notice and statement-of-reasons requirements for removals impermissibly infringe the President's Article II powers would fail, and hence no such argument can defeat plaintiffs' showing of likely success on the merits.

The Supreme Court has explained that "[j]ust as the President's 'selection of administrative officers is essential to the execution of the laws by him, so must be his power of removing those for whom he cannot continue to be responsible.'" *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 214 (2020) (quoting *Myers v. United States*, 272 U.S. 52, 117 (1926)). Hence, when it comes to certain "Officers of the United States," U.S. Const. art. II, §2, cl. 2, "the President's removal power is the rule, not the exception," *Seila Law*, 591 U.S. at 228.  The IG Act does not contravene that principle, for either of two overarching reasons.

1. IGs are not principal "Officers of the United States" within the meaning of Article II or Supreme Court jurisprudence. They are either employees rather than officers or (if they are officers) they are inferior officers. Either way, the IG Act's modest removal restrictions are permissible.

IGs are properly classified as federal employees rather than officers under the Appointments Clause because they do not "exercis[e] *significant* authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam) (emphasis added). The IG Act does not vest IGs with authority over the "administration and enforcement of public law," *id.* at 141, nor with the authority to issue legally binding, final decisions, *see Lucia v. Securities & Exchange Commission*, 585 U.S. 237, 249 (2018). IGs do not make policy—for example, they do not issue rules or direct or prohibit agency activity—and they generally have no enforcement authority beyond their limited power (a power shared by, for example, FBI agents who are unquestionably employees rather than officers) to make arrests, conduct searches, and seize evidence. 5 U.S.C. §406(f). IGs cannot unilaterally change agency policy or initiate a prosecution, *see id.* §404(a); those actions can happen only if other executive officials exercise their own "significant discretion," *Lucia*, 585 U.S. at 247-248. At bottom, IGs exercise investigative, informational, and recommendatory powers. *Buckley*, 424 U.S. at 137; *see also Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 507 n.10 (2010).

The fact that the IG Act required plaintiffs to be appointed to their positions by the President and confirmed by the Senate, 5 U.S.C. §403(a), does not by itself make them officers of the United States. The Supreme Court has rejected the notion that "every time Congress chooses to require advice and consent procedures it does so because they are constitutionally required," recognizing that "Congress may wish to require Senate confirmation for policy reasons" instead. *Financial*

*Oversight & Management Board for Puerto Rico v. Aurelius Investment, LLC*, 590 U.S. 448, 459 (2020). Congress has also applied federal law applicable to "employees"—not "officers"—to IGs: The President may immediately remove an IG who poses a threat to the workplace under the procedures of 5 U.S.C. §6329b(b)(2)(A), which covers federal *employees*.

In any event, as explained in the following paragraphs, if IGs are officers then they are inferior officers—and the Supreme Court has held that Congress may place restrictions on their removal without infringing the President's removal power. In particular, Congress can "provide tenure protections to certain *inferior* officers with narrowly defined duties," *Seila Law*, 591 U.S. at 204 (citing *Morrison v. Olson*, 487 U.S. 654 (1988), and *United States v. Perkins*, 116 U. S. 483 (1886)), i.e., can restrict removal of "inferior officers with limited duties and no policymaking or administrative authority," *id.* at 218.

"Generally speaking, the term 'inferior officer' connotes a relationship with some higher-ranking officer or officers below the President: Whether one is an 'inferior' officer depends on whether he has a superior." *Edmond v. United States*, 520 U.S. 651, 662 (1997). Indeed, the Supreme Court has recognized that one indication of "an inferior officer" is that "he labor[s] under the general direction of the Secretary of the" agency within which he works. *Seila Law*, 591 U.S. at 220-221 (quotation marks omitted). That is the situation here, as the IG Act provides that "[e]ach [IG] shall report to and be under the general supervision of the head of the [agency] involved" and the next-highest ranking official, 5 U.S.C. §403(a).

Plaintiffs are also inferior officers because, as explained, Congress has expressly provided that they have no authority over agency policymaking, 5 U.S.C. §403(c), and can only "*recommend* policies" and procedures to promote "economy, efficiency, and effectiveness" by rooting out waste, fraud, and abuse, *id.* §404(a) (emphasis added). Again, IGs have no power to compel or prohibit

agency activity. *See* Garvey, Congressional Research Service, R46762, *Congress's Authority to Limit the Removal of Inspector Generals* at 3 (Apr. 16, 2021).[7]  Nor can IGs "be delegated any 'program operating responsibilities' or conduct 'regulatory compliance.'"  *Id.*  They are thus akin to the independent counsels whom the Supreme Court deemed to be inferior officers even though their power to "initiate criminal investigations and prosecutions" was a "core executive power," *Seila Law*, 591 U.S. at 219 (discussing *Morrison*).

2. Even if IGs were principal "Officers of the United States" within the meaning of Article II, the IG Act's removal provisions would still be too limited to violate Article II.  The statute does not prevent the President from removing any IG, nor imposes a for-cause restriction on removal.  To the contrary, it expressly says that "[a]n Inspector General may be removed from office by the President," 5 U.S.C. §403(b).  Nor does the statute prevent the President from immediately putting an IG into a non-duty status when there is reason to do so.  It simply imposes modest procedural prerequisites, notice and a statement of reasons for removal, each of which helps promote transparency and inter-branch dialogue, while also ensuring that a coordinate branch of government will have the information it needs in deciding how to exercise its constitutional authority to legislate and to oversee the executive.

These procedural requirements are different in kind from the for-cause-removal and other substantive protections the Supreme Court has held violate the President's removal authority.  *See, e.g.*, *Free Enterprise Fund*, 561 U.S. at 484.  There are no requirements, for example, regarding what constitutes an acceptable statement of reasons beyond that it be "substantive" and that the "reasons" be described in "detail[]" and be "case-specific."  Nor does the IG Act create a cause of action or any other means to challenge the sufficiency of a President's communicated reason for a

---

[7] https://crsreports.congress.gov/product/pdf/R/R46762.

removal.  All this explains why the D.C. Circuit has recognized that the statement of reasons is a "minimal statutory mandate."  *Walpin v. Corporation for National & Community Services*, 630 F.3d 184, 187 (D.C. Cir. 2011).  Neither the statement requirement nor any of the other procedural restrictions on removal is remotely onerous enough to transgress Article II even if IGs were principal "Officers of the United States."

## II.   Plaintiffs Will Likely Suffer Irreparable Harm If Preliminary Relief Is Denied

Preliminary relief is warranted because without it, plaintiffs will likely suffer irreparable harm.  Indeed, just days ago another judge in this district found the irreparable-harm requirement satisfied in extremely similar circumstances, namely where an IG alleged that his purported removal by President Trump did not comply with statutory requirements.  *See Dellinger*, 2025 WL 471022, at *9-13.

That finding is consistent with other case law in this jurisdiction granting preliminary relief on the ground that "deprivation of the statutory right to function" in presidentially appointed, Senate-confirmed positions constitutes irreparable harm.  *Berry v. Reagan*, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983).  For example, in one case this Court granted a temporary restraining order against removal of members of the Postal Service Board of Governors because removal "could be irrevocably disruptive of the Board's function and plaintiffs' legal responsibility for carrying it out."  *Mackie v. Bush*, 809 F.Supp. 144, 146 (D.D.C. 1993), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993) (per curiam).  Likewise here, defendants' challenged conduct "disrupt[s]" plaintiffs' "ability to fulfill [their statutory] mandate[s]" to prevent and detect waste, fraud, and abuse at their agencies in a non-partisan manner.  *Berry*, 1983 WL 538, at *5.

Plaintiffs' accompanying declarations detail some of the additional irreparable harm that would flow from denial of an injunction.  For example, absent preliminary relief, plaintiffs'

reputations will suffer.  Grimm Decl. ¶¶13-14; Bruce Decl ¶12.  Such "harm to reputation can in certain circumstances[] constitute irreparable injury." *Jones v. District of Columbia*, 177 F.Supp.3d 542, 546–548 (D.D.C. 2016); *accord Trudeau v. Federal Trade Commission*, 384 F.Supp.2d 281, 297 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006).  Those circumstances are present here, because for oversight professionals, a reputation for integrity is essential, and its unreasoned destruction—including, as here, through defendants' spokespeople referring to plaintiffs "as rogue, partisan bureaucrats," Grimm Decl. ¶¶13-14—cannot be undone.

The irreparable injuries plaintiffs would suffer from the denial of preliminary relief distinguish this case from run-of-the-mill government-employment disputes, constituting a difference "'sufficient in kind and degree to override the factors cutting against the general availability of preliminary [relief] … in Government personnel cases.'"  *Berry*, 1983 WL 538, at *5 (quoting *Sampson v. Murray*, 415 U.S. 61, 84 (1974)).

## III.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT ISSUANCE OF PRELIMINARY RELIEF

Lastly, the balance of the equities and the public interest (which, as noted, merge in this case) strongly favor issuance of preliminary relief.  Defendants cannot point to a cognizable harm in being required to allow plaintiffs to perform their statutory duties unless and until they are removed pursuant to 5 U.S.C. §403(b)'s procedural requirements.  And the public has a paramount interest in preserving the integrity of its federal government, in maintaining transparency and oversight of federal spending and public administration, and in achieving accountability for waste, fraud, and abuse.  In 2023 alone, for instance IGs' work resulted in savings of more than $90 billion in taxpayer dollars—i.e., more than $26 in savings for every dollar invested in their offices.  *See* CIGIE, Annual Report to the President and Congress: Fiscal Year 2023, CIGIE, at 2 (Mar. 19,

2024).[8]  That impact is not only monetary.  IGs' work helps to safeguard U.S. national security.
Storch Decl. ¶¶2-7.  IGs' work stops fraud, helping to both recover the fruits of such fraud and put
fraudsters in prison.  Turner Decl. ¶¶3-5.  And IGs' work helps to end mistreatment of some of the
nation's most vulnerable citizens.  Grimm Decl. ¶¶2-7.

Plaintiffs are uniquely capable of providing these public benefits because they have long
served as IGs (and elsewhere in government agencies), have developed deep relationships and
substantive knowledge about their agencies' operations, and are experienced investigators,
auditors, program evaluators, and attorneys. Fong Decl. ¶¶2-5; Storch Decl. ¶¶2-7; Missal Decl.
¶¶2-7; Grimm Decl. ¶¶2-7; Turner Decl. ¶¶2-5; Ware Decl. ¶¶2-6; Richardson Decl. ¶¶2-8; Bruce
Decl. ¶¶2-6.  Defendants' actions, moreover, telegraph to the public that many of the largest federal
agencies now lack the institutional mechanisms to detect and stop fraud and abuse (or at a
minimum those mechanisms have been greatly weakened), which will likely engender wrongdoing
that could harm the public.

Enabling IGs to continue discharging their statutory duties also serves the public interest
by assisting Congress in its important oversight and lawmaking roles.  IGs are required to keep
"Congress fully and currently informed … concerning problems, abuses, and deficiencies," 5
U.S.C. §404(a)(5).  And the Supreme Court has recognized that IGs are "vital to effectuating
Congress' intent and maintaining an opportunity for objective inquiries into bureaucratic waste,
fraud, abuse, and mismanagement." *NASA v. Federal Labor Relations Authority*, 527 U.S. 229,
240 (1999).  Undermining this essential source of objective information would disrupt the

---

[8] https://www.ignet.gov/sites/default/files/files/CIGIEAnnualReporttothePresidentFY2023_FIN
AL.pdf.

legislative process and diminish the efficiency and effectiveness of government operations over both the short and long term.

Finally, granting preliminary relief would vindicate the public interest in upholding the rule of law. Defendants' disregard for the IG Act's modest but important requirements for removal of IGs from their Senate-confirmed positions represents a fundamental disrespect for the law. Such disregard for the statutes duly enacted by Congress and signed by prior Presidents harms the public.

## CONCLUSION

The Court should enter a temporary restraining order and preliminary injunction (1) declaring that plaintiffs shall continue to serve in their respective positions as Inspector General, and (2) enjoining Agency Defendants from (a) taking any further action to obstruct plaintiffs from doing so and (b) recognizing the authority of any other person as any plaintiff's successor as IG. The Court should also set an expedited schedule for defendants' briefing in opposition to the preliminary injunction plaintiffs seek. Alternatively, the Court should consolidate consideration of the request for a preliminary injunction with consideration of the merits, pursuant to Federal Rule of Civil Procedure 65(a)(2).

February 14, 2025                              Respectfully submitted,

                                              */s/ Seth P. Waxman*
                                              ───────────────────────────

                                              Seth P. Waxman (D.C. Bar No. 257337)
                                              David W. Ogden (D.C. Bar No. 375951)[*]
                                              Daniel Volchok (D.C. Bar No. 497341)
                                              Jamie Yood (D.C. Bar No. 1033919)[†]
                                              Hillary Chutter-Ames (D.D.C. Bar ID D00652)
                                              Ann E. Himes (D.C. Bar No. 1767647)[†]
                                              WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
                                              2100 Pennsylvania Avenue N.W.
                                              Washington, D.C. 20037
                                              (202) 663-6000
                                              seth.waxman@wilmerhale.com
                                              david.ogden@wilmerhale.com
                                              daniel.volchok@wilmerhale.com
                                              jamie.yood@wilmerhale.com
                                              hillary.chutter-ames@wilmerhale.com
                                              annie.himes@wilmerhale.com

                                              Nicholas Werle[‡]
                                              WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
                                              7 World Trade Center
                                              250 Greenwich Street
                                              New York, New York 10007
                                              (212) 230-8800
                                              nick.werle@wilmerhale.com

                                              [*] *Renewal pending*
                                              [†] *Court admission pending*
                                              [‡] *Pro hac vice application pending*