# EXHIBIT A

# Council of the INSPECTORS GENERAL on INTEGRITY and EFFICIENCY

# *THE INSPECTORS GENERAL*
*July 14, 2014*

## INTRODUCTION

The concept of a statutory Inspector General (IG) was broadly introduced to the civilian side of the Federal government by the Inspector General Act of 1978 (IG Act).[1] The original Inspectors General (IGs) were established in 12 Federal agencies. The concept has proved so successful that today, there are 72 statutory IGs across the Federal government.

Statutory IGs are structurally unique within the Federal government. The stated purpose of the IG Act is to create independent and objective units within each agency whose duty it is to combat waste, fraud, and abuse in the programs and operations of that agency.[2] To this end, each IG is responsible for conducting audits and investigations relating to the programs and operations of its agency, and providing leadership and coordination and recommending policies for, and to conduct, supervise, or coordinate other activities[3] for the purpose of promoting economy, efficiency, and effectiveness and preventing and detecting fraud and abuse in those programs and operations. Importantly, each IG is also to keep the agency head and the Congress "fully and currently informed" about problems and deficiencies relating to the administration of agency programs and operations. The IG Act contains a variety of statutory guarantees of Office of Inspector General (OIG) independence, designed to ensure the objectivity of OIG work and to safeguard against efforts to compromise that objectivity or hinder OIG operations. It is these guarantees of independence that make statutory IGs unique.

This paper, prepared by the Council of the Inspectors General on Integrity and Efficiency (CIGIE),[4] explores the authorities, responsibilities, and independence of statutory IGs. It is

---

[1] Pub. L. No. 95-452 (Oct. 12, 1978), 5 U.S.C. app. 3.
[2] Additionally, the IG Act, at section 7, sets out that the IG may receive and investigate complaints alleging mismanagement.
[3] For example, many IGs conduct inspections and evaluations.
[4] Established by the Inspector General Reform Act of 2008, CIGIE is a council made up of 72 IGs and others in the Federal law enforcement and program integrity community, including the Office of Management and Budget (OMB). The mission of the Council is to address integrity, economy, and effectiveness issues that transcend individual Government agencies and to increase the professionalism and effectiveness of personnel by developing policies, standards, and approaches to aid in the establishment of a well-trained and highly skilled workforce in the offices of the IGs. The Council has annual and other reporting requirements to the President and to Congress [IG Act, § 11].

presented for purposes of providing a better understanding of these attributes, and to foster a productive, informed working relationship between agency executives and their IGs.[5]

## SELECTION, APPOINTMENT, AND REMOVAL OF IGs

At the outset, it is important to note that there are two distinct types of IGs under the IG Act: those in "establishment" agencies (establishment IGs) and those in "designated Federal entities" (DFE) (DFE IGs).[6] Establishment IGs are appointed by the President with Senate confirmation, whereas DFE IGs are appointed by the agency head, which may be an individual, a board, or a commission. With a few exceptions, both types of IGs share the same authorities and responsibilities. For consistency, the term "agencies" is used throughout this paper to apply equally to establishment agencies and DFEs.[7] Where there are significant differences, the two are distinguished.

### A. SELECTION AND APPOINTMENT

Under the IG Act, all IGs must be selected without regard to political affiliation and based solely on "integrity and demonstrated ability in accounting, auditing, financial analysis, law, management analysis, public administration, or investigations"[8] [IG Act, §§ 3(a); 8G(c)].

> *Establishment IGs [IG Act, § 3(a)]:* Establishment IGs are appointed by the President and confirmed by the Senate. Pay for establishment IGs is fixed by statute at Executive Schedule level III plus three percent.[9]
>
> *DFE IGs [IG Act, § 8G(c)]:* DFE IGs are appointed by the head of the entity. In DFE agencies with a board or commission, that board or commission is considered the entity head.[10] For pay and all other purposes, the grade, level, or rank of a DFE IG must be at or above the majority of the senior level executives within that entity (such as the General Counsel, Chief Information Officer, or Chief Acquisition Officer); DFE IG pay must not be less than the average total annual compensation (with bonuses included) of the DFE's senior level executives.[11]

---

[5] Please note that this paper summarizes authorities granted by statute to Federal IGs. This is not intended to change the existing authority of each IG to exercise legal discretion and professional judgment to interpret and execute those authorities for his or her Office in particular circumstances.

[6] Appendix 1 contains a list of all departments and agencies with statutory IGs, and identifies each as an "establishment" agency (with a Presidentially-appointed IG), or "Designated Federal Entity" (with an IG appointed by the head of the entity or a governing board).

[7] We note that some IGs were established by statutes other than the IG Act. Some of these IGs are listed in Appendix 1. In some cases, these statutes incorporate some of the authorities and responsibilities of the IG Act; where this is true, this paper will also be applicable to IGs in those agencies.

[8] Particular IGs may also be subject to additional requirements [*see, e.g.,* IG Act, § 8D(i)].

[9] If an IG is appointed from a Senior Executive Service (SES) position, the IG Act provides that the IG may elect to retain his or her SES pay level, which could be higher. [IG Act, § 3, note].

[10] As of 2011, the Government Accountability Office (GAO) reported that 26 of 33 DFEs have boards or commissions. GAO-11-770, *Inspectors General, Reporting on Independence, Effectiveness, and Expertise* (Sept. 2011).

[11] For additional information on fixing the pay of an IG of a DFE, see the IG Reform Act, § 4(b)-(d), Pub. L. No. 110-409 (codified at IG Act, § 3, note).

CIGIE submits recommendations of individuals for IG appointments to the appropriate appointing authorities for both DFE and establishment IG positions [IG Act, § 11(c)(1)(F)]. So as not to compromise the independence of his or her work, no IG may receive a cash award or cash bonus [IG Act, § 3(f)].

## B. REMOVAL OR TRANSFER

Although IGs generally serve at the pleasure of the President or DFE head, the IG Act contains procedural safeguards to help ensure the independence of IGs and to ensure that Congress is informed of the reasons for their removal or transfer before such action takes place. These safeguards are meant to prevent IGs from being removed for political reasons or simply because they are doing an effective job of identifying fraud, waste, and abuse.

Specifically:

> *Establishment IGs [IG Act, § 3(b)]:* An establishment IG may be removed from office or transferred to another position within the agency by the President; however, the President must communicate the reasons for the action in writing to both Houses of Congress at least 30 days before the removal or transfer.
>
> *DFE IGs [IG Act, § 8G(e)]:* Likewise, a DFE IG may be removed from office or transferred to another position within the agency by the entity head; however, the entity head must communicate the reasons for the action in writing to both Houses of Congress at least 30 days before the removal or transfer. In a DFE agency with a board or commission, removal or transfer of a DFE IG requires the written concurrence of two-thirds of the members of the board or commission.

In both cases, Congressional notification letters must be sent by the President (for establishment IGs) or the entity head (for DFE IGs) to "both Houses of Congress." Entity heads are also requested to provide copies of the Congressional notifications to the CIGIE Chair.

## OIG INDEPENDENCE AND THE RELATIONSHIP WITH AGENCY MANAGEMENT

In creating the OIGs, Congress sought to "strike a workable balance" for IGs and agency heads. The Senate Committee on Governmental Affairs explained:

> If the agency head is committed to running and managing the agency effectively and to rooting out fraud, abuse and waste at all levels, the Inspector and Auditor General[12] can be his strong right arm in doing so, while maintaining the independence needed to honor his reporting obligations to Congress.[13]

This balance is accomplished through a number of provisions of the Act.

---

[12] This was the name given to IGs in the original bill; it was later shortened to "Inspector General."
[13] S. REP. NO. 95-1071, at 9 (1978).

3

*A. GENERAL SUPERVISION*

The IG Act specifically prohibits agency management officials from supervising the IG. This important organizational independence helps to limit the potential for conflicts of interest that exist when an audit or investigative function is placed under the authority of the official whose particular programs are being scrutinized. This insulates IGs against reprisal and promotes independent and objective reporting.

> *Establishment IGs [IG Act, § 3(a)]:* The Act specifies that each IG "shall report to and be under the general supervision of the head of the establishment involved or, to the extent such authority is delegated, the officer next in rank below such head, but shall not report to, or be subject to supervision by, any other officer of such establishment." Except under narrow circumstances discussed below, even the head of the establishment may not prevent or prohibit the IG from initiating, carrying out, or completing any audit or investigation, or from issuing any subpoena during the course of any audit or investigation.
>
> *DFE IGs [IG Act, § 8G(d)]:* Similarly, each DFE IG "shall report to and be under the general supervision of the head of the [DFE], but shall not report to, or be subject to supervision by, any other officer or employee of such [DFE]." Again, except in narrow circumstances discussed below, even the head of the DFE may not prevent or prohibit the IG from initiating, carrying out, or completing any audit or investigation, or from issuing any subpoena during the course of any audit or investigation.

There is no statutory definition of "general supervision." However, the IG Act is clear that this supervision is limited and may not be exercised in a way that would inhibit an IG's full discretion to undertake an audit or investigation, issue subpoenas, and see these matters through to conclusion. Additionally, although only a few court decisions have analyzed the "general supervision" language of the IG Act, one case in particular, *United States Nuclear Regulatory Commission v. Federal Labor Relations Authority*, 25 F.3d 229, 235 (4th Cir. 1994), reviewed the legislative history of the "general supervision" language and described the agency head's supervisory authority over the IG as "nominal."

As mentioned above, there is one exception to the prohibition on agency interference with IG audits, investigations, and subpoenas. Under the IG Act, the heads of seven agencies (the Departments of Defense, Homeland Security, Justice, Treasury, plus the Federal Reserve Board and Consumer Financial Protection Bureau, and the Postal Service) may prevent their respective IGs from initiating or completing an investigation or audit, or issuing a subpoena, but only for reasons specified in the IG Act [*see, e.g.,* IG Act, § 8].[14] These reasons include, among others, preserving national security interests, protecting ongoing criminal prosecutions, or limiting the disclosure of information that could significantly influence the economy or market behavior [*see,*

---

[14] Other statutes may provide heads of agencies with similar powers over IG audits, investigations, and subpoenas. For example, the Secretary of Defense, in consultation with the Director of National Intelligence, has those powers with respect to the Defense Intelligence Component (DIC) IGs.

4

*e.g.,* IG Act, § 8D]. If an agency head invokes this power, he or she must send an explanatory statement to certain Congressional Committees within 30 days.[15]

## B. IG ACCESS TO AGENCY HEAD

The IG is required to have direct and prompt access to the agency head when necessary to perform the IG's functions and responsibilities [IG Act, § 6(a)(6)]. This provision helps make sure that the agency head hears, first hand and promptly, needed information on serious problems and abuses within the agency. It also helps ensure timely access by the IG to all records and information in the agency's possession.

## C. IG REPORTING TO THE CONGRESS

The IG Act creates a rare dual reporting obligation for IGs to keep both the head of the agency and the Congress "fully and currently informed" about deficiencies in agency programs and operations, and progress in correcting those deficiencies [IG Act § 4(a)(5)]. In part, this responsibility is fulfilled through the two reports discussed below. Many OIGs also have agency- or program-specific reports that they are obligated to submit to the Congress. In addition, IGs brief their agency heads on important audits, investigations, and other issues, as appropriate, testify frequently before Congressional committees, and respond to Questions for the Record (QFRs). They also field requests, provide briefings to, and participate in meetings with Congressional members and their staff on a regular basis.

*Semiannual Reports [IG Act, § 5]*: IGs must issue semiannual reports detailing, among other items, significant problems and deficiencies identified by the OIG during the preceding six-month period (ending March 31 and September 30), listing current and pending recommendations and summarizing prosecutorial referrals made during the period. The report also describes any significant disagreements with agency management concerning OIG recommendations. By law, the IG submits the report first to the agency head (no later than April 30 and October 31 of each year). The agency head must prepare a companion report, detailing management's actions in response to OIG findings and recommendations. Upon receipt of the IG's semiannual report, the agency head has 30 days to append comments and his/her companion report and transmit both to the appropriate committees of the Congress.[16]

The IG Act does not require IGs to seek clearance of the semiannual report by the agency head, although the IG may choose to circulate the report in draft format to the appropriate agency officials for technical comments. The agency head may not change the OIG's semiannual report, but he or she may separately provide comments.

---

[15] There are separate authorities applicable to the Central Intelligence Agency, Intelligence Community IG, and the DIC IGs, including Defense Intelligence Agency, National Security Agency, National Reconnaissance Office, and National Geospatial-Intelligence Agency, which require reports to respective Congressional oversight committees within 7 days.

[16] Additionally, for those agencies subject to its provisions, the Reports Consolidation Act of 2000 (31 U.S.C. § 3516(a)(2)(C)) authorizes an agency head to respond to IG reports on an annual basis. Agencies must first consult with OMB and appropriate Congressional committees.

As set out in the IG Act, the semiannual reports of the OIG and the agency head are prepared independently. However, because both reports must contain specified statistical data relating to the same universe of audit, inspection, and evaluation reports, management and the IG should routinely reconcile their follow-up data and account for any discrepancies between them.[17]

*"Seven-Day Letter" [IG Act, § 5(d)]*: Section 5(d) of the IG Act authorizes an IG to report "immediately" to the agency head when the IG becomes aware of "particularly serious or flagrant problems, abuses, or deficiencies relating to the administration of programs and operations." In turn, the agency head must transmit the report—and any comments—to the appropriate committees or subcommittees of Congress within seven calendar days. In practice, the "Seven-Day Letter" is a powerful tool available to the IG in compelling circumstances requiring immediate Congressional attention.

### D. OVERSEEING THE OIG

The statutory independence of IGs raises the fair question of, "Who oversees the IG?" The IG Act does have several mechanisms for IG accountability. First, all OIG reports (excluding those containing classified or other information that may not be released) are published on the particular OIG's website and are open to public scrutiny [IG Act, § 8M(b)(1)]. The OIG semiannual reports are also, by law, publicly available. These reports, together with the companion agency report, reveal important information on the acceptance and implementation of OIG recommendations. Moreover, OIG Audit Offices are subject to external peer review for compliance with Government Auditing Standards, established by GAO, at least once every three years.[18] OIGs that exercise statutory law enforcement authorities (discussed below) under the IG Act are also subject to mandatory peer review of their Office of Investigations every three years.[19] OIG evaluations and inspections professionals are currently pilot testing peer reviews for that function as well. Information regarding all peer reviews is made public in the OIGs' semiannual reports [IG Act, § 5].

Another form of OIG oversight is CIGIE's role in ensuring OIG professionalism. For example, CIGIE sets government-wide quality standards that form the basis for the professional peer reviews described above [IG Act, § 11(c)(2)]. OIG staff must adhere to these professional standards, so long as they are not inconsistent with Government Auditing Standards. CIGIE also coordinates cross-agency work and provides professional training opportunities for IGs across government.

Under applicable standards, another aspect of professionalism is the need for OIGs to have qualified personnel. For many OIG positions, OIG personnel must also meet continuing education requirements to maintain professional competency for their positions. The importance

---

[17] Defense Intelligence Component IGs have a separate statutory obligation to submit an additional annual report directly to the Intelligence Committees [*see* IG Act § 8H(g)].

[18] Frequency of audit peer review is set by GAO in its Government Auditing Standards, which IGs are obligated to follow [IG Act, § 4(b)(1)(A)].

[19] There are four OIGs (Department of Agriculture, Department of Defense, U.S. Postal Service, and Treasury IG for Tax Administration) that derive their law enforcement authority from legislation other than the IG Act of 1978, as amended, and may voluntarily submit to such peer review processes.

of training for OIG personnel is reflected in the IG Act, which requires all IGs to include training information in their annual budget requests [IG Act, § 6(f)(1)].

When an allegation of wrongdoing is lodged against an IG or a member of his/her senior staff, the Integrity Committee of CIGIE serves as an independent reviewer and investigative mechanism for those allegations [IG Act, §§ 11(d)(1) and (4)]. An official of the Federal Bureau of Investigation serves as Chairperson of the Integrity Committee. [IG Act, § 11(d)(2)(A)].

## STRUCTURE & ADMINISTRATION OF OFFICES OF INSPECTOR GENERAL

### A. OFFICE STRUCTURE

OIGs are given considerable latitude in organizing their offices as they see fit to best carry out the duties assigned to them by statute. This autonomy is described in more detail below. Nonetheless, the IG Act does contain certain requirements with respect to OIG staffing:

*Assistant Inspectors General [IG Act, § 3(d)]:* Establishment IGs are required to appoint two officials—an Assistant Inspector General for Auditing, who is responsible for supervising the performance of audits relating to programs and operations of that agency, and an Assistant Inspector General for Investigations, who is similarly responsible for supervising investigations of those programs and operations. There is no corresponding requirement that IGs in DFE agencies appoint these officials; in practice, however, this is the model followed by many DFE IGs.

*Legal Counsel [IG Act, §§ 3(g); 8G(g)(4)]:* IGs are required by law to obtain legal counsel independent of the agency counsel. Specifically, the IG Act requires an IG to obtain legal advice from a counsel who reports directly to the IG or to another IG. Alternatively, DFE IGs may obtain services of appropriate staff of CIGIE on a reimbursable basis.

*Evaluations and Inspections.* Many IGs have offices that perform inspections or evaluations of their agency's programs and operations. Where an IG does perform inspections or evaluations, it must conduct them in accordance with CIGIE Quality Standards for Inspection and Evaluation [IG Act, § 11(c)(2)(A)]. In addition, the IG must include a list of any inspection or evaluation reports and their results in its semiannual report [IG Act, § 5].

*Whistleblower Ombudsman.* Each establishment IG (except certain IGs in the intelligence community) is required to designate a Whistleblower Ombudsman. This is described in more detail later in this paper [IG Act, § 3(d)(1)(C)].

### B. PERSONNEL, PROCUREMENT, AND LOGISTICAL SUPPORT

To ensure that each IG would be able to secure the resources necessary to carry out his or her duties, Congress provided the IG with broad administrative authorities:

- to select, appoint, and employ such officers as may be necessary for carrying out the functions, powers, and duties of the OIG [IG Act, §§ 6(a)(7); 8G(g)(2)], and to be

> considered head of the agency with respect to authorities related to separation, retirement, and reemployment of OIG employees [IG Act, § 6(d)];
> - to obtain consultant services [IG Act, §§ 6(a)(8); 8G(g)(2)];
> - to contract for audits, studies, analyses, and other services [IG Act, § 6(a)(9)]; and
> - to appoint individuals to Senior Executive Service (SES) positions within the OIG [IG Act, § 6(d)] and to be considered head of the agency for all SES positions within the OIG.

The IG Act also directs each agency head to provide the IG with "appropriate and adequate office space . . . together with such equipment, office supplies and communications facilities and services as may be necessary for the operation of such offices . . . ." [IG Act, § 6(c)].

Congressional intent in including these broad authorities was clear. In the legislative history to the IG Act, the Senate Committee on Governmental Affairs acknowledged that administrative personnel and contracting authorities usually rest with the agency head and are delegated by him or her to subordinate officials. However, because of the IG's "unique function . . . and the possibility that such authority might be denied to him in order to hamper his operations, the committee has given him explicit authority to carry out these functions."[20]

Although OIGs are authorized to exercise personnel and procurement authorities independent of the parent agency, often it is more cost effective to obtain these services from the agency. Thus, in many agencies, the OIG continues to rely on the parent agency for personnel and/or procurement functions. Again, though, the IG must employ or retain (by reimbursable agreement) independent counsel.

## C. OIG BUDGET

Another way that the IG Act promotes IG independence is through individual reporting of OIG budgets. Section 6(f) of the IG Act specifically requires that each IG's requested budget amounts be separately identified within their agency budgets when submitted to OMB and by OMB to the Congress. Also, section 6(f)(3) of the IG Act authorizes IGs to comment to Congress on the sufficiency of their budgets if the amount proposed in the President's budget would "substantially inhibit the [IG] from performing the duties of the office." Additional details with respect to this reporting requirement are set forth in Appendix 2.

Under Federal law, agency budget requests must be submitted by the individual agency head to OMB. This includes the budgets of the respective OIGs. However, it is important to note that while each agency head is responsible for budget formulation and execution decisions affecting the entire agency (including the OIG), in practice, the OIG may also have an ongoing dialogue with the OMB budget examiner about the OIG's operational plans, activities, and accomplishments.[21]

---

[20] S. REP. NO. 95-1071, at 35 (1978).

[21] Out of concern that intelligence agencies may consider reducing the budgets and workforce of their IGs, separate legislation was enacted in 2013 designating the OIG of an intelligence agency as a congressional special interest item [Intelligence Authorization Act for Fiscal Year 2013, Classified Annex]. In addition, some IGs for nonappropriated agencies do not submit budget requests to OMB.

## IG OPERATIONS

### A. AUDITS, INVESTIGATIONS, AND EVALUATIONS

Each OIG has a broad statutory mandate to "conduct . . . audits and investigations relating to the programs and operations" of the agency and to "conduct . . . other activities . . . for the purpose of promoting economy and efficiency in the administration of . . ." the agency [IG Act, §§ 4(a)(1), (a)(3)].[22] Within this broad mandate, the IG is given full discretion to undertake those investigations that are, in the judgment of the IG, "necessary or desirable" [IG Act, § 6(a)(2)].[23] Although the IG reports to the agency head, even that official may not compromise the initiation or conduct of an OIG audit or investigation [IG Act, §§ 3; 8G(d)].[24]

As discussed above, OIG audits are conducted in accordance with Government Auditing Standards established by the Comptroller General [IG Act, § 4(b)(1)(A)]. In addition, OIGs coordinate with the Comptroller General to avoid duplication in Federal audits [IG Act, § 4(c)]. OIGs also establish criteria for using non-Federal auditors (typically, Certified Public Accountant firms) and ensure that such auditors comply with Government Auditing Standards.

OIGs are charged with not only investigating or auditing fraud, waste, and abuse after they have occurred, but also identifying vulnerabilities and recommending programmatic changes that would, when enacted or implemented, strengthen controls or mitigate risk. Additionally, OIGs may investigate allegations of mismanagement. To this end, some OIGs, but not all, have separate offices devoted to conducting program inspections and evaluations. Others fulfill this responsibility through their audit and investigative offices. Where an OIG does conduct program evaluations and inspections, the IG is charged with tracking and reporting these recommendations in its semiannual report to the Congress, just as it reports its audit findings and recommendations.

The objectivity of these fact-finding efforts is enhanced by the considerable independence given the IGs, which is discussed throughout this paper. This independence enables IGs to fulfill a fundamental responsibility to keep the agency head and the Congress informed about problems and deficiencies in agency programs and operations. However, the statutory requirement for operational independence with respect to IG audits and investigations does not foreclose coordination and cooperation between the IG and agency management. For example, OIGs generally invite agency management to comment on the IG's annual work plan; in this way, managers can offer suggestions on risk areas they perceive in their day-to-day operations of

---

[22] The IG Act, at section 8, sets out unique authorities or responsibilities for certain OIGs. Other statutes may also enlarge or change an IG's authorities within a particular agency. For information on these OIG-specific authorities, it may be helpful to consult the website for the particular OIG. These may be accessed via the CIGIE website at http://www.ignet.gov/igs/homepage1.html.

[23] While each IG has broad discretion as to the work his or her office undertakes, certain audits or reviews are mandated by statute. For example, most IGs are required by the Federal Information Security Management Act to perform an annual evaluation to determine the effectiveness of their agency's information security program and practices (44 U.S.C. §§ 3541-3549). For many agencies, their financial statements must be audited annually by the IG or by an independent auditor as determined by the OIG (31 U.S.C. § 3521). For other such mandated work, you may consult the particular IG's semiannual report; these reports may be accessed via the CIGIE website at http://www.ignet.gov/igs/homepage1.html.

[24] See page 4 and footnote 14 for exceptions.

agency programs. Consultation with subject matter experts in the agency's program offices also can enhance OIG work products.

OIG investigations are conducted in accordance with the CIGIE Quality Standards for Investigations and Federal law. In conducting investigations, whenever the IG has "reasonable grounds to believe there has been a violation of Federal criminal law," the IG must promptly report the matter to the Department of Justice [IG Act, § 4(d)]. These reports are to be made directly to the Department of Justice, without prior clearance by agency officials outside OIG.

> *Law Enforcement Authorities [IG Act § 6(e)]:*  The IG Act authorizes criminal investigators in the offices of 24 Presidentially-appointed IGs to exercise law enforcement powers while conducting official duties. More specifically, these law enforcement powers include the authority to (1) carry a firearm while engaged in official duties; (2) make an arrest without a warrant for any Federal offense committed in the presence of the agent, or when the agent has reasonable grounds to believe that the person to be arrested has committed or is committing a Federal felony; and (3) seek and execute Federal warrants for arrest, search of premises, or seizure of evidence under the authority of the United States. The Act also provides a mechanism whereby the Attorney General may, after an initial determination of need,[25] confer law enforcement powers on investigative personnel of other OIGs, including those in DFE OIGs. Those OIGs with law enforcement authority conferred directly by statute or designated by the Attorney General must exercise those powers in accordance with guidelines promulgated by the Attorney General. Each OIG also undergoes periodic peer review of its exercise of law enforcement powers. A listing of OIGs with statutory law enforcement powers, including several OIGs that exercise law enforcement authority pursuant to statutes other than the IG Act, is attached in Appendix 3.

## B. WEBSITE REQUIREMENTS

To facilitate reporting of fraud, waste, and abuse to IGs, each agency homepage must contain a direct link to the website of the agency's OIG [IG Act, § 8M]. In turn, each OIG homepage must have a direct link for individuals to report fraud, waste, and abuse. Such reports may be anonymous. The OIG is prohibited from disclosing the identity of anyone making a complaint through its website without their consent, except where disclosure is "unavoidable during the course of the investigation" [IG Act, § 8M(b)(2)]. Agency officials are encouraged to periodically confirm that their website's links to the OIG are in place and operational.

It is also important to note that the IG Act requires OIGs to post public reports (or portions) and final audit reports on the OIG website.[26] Under this requirement, reports must be posted not later than three days after being made publicly available [IG Act, § 8M(b)(1)].

---

[25] OIGs that seek Attorney General authorization to exercise law enforcement powers must demonstrate that: the OIGs have been significantly hampered by the lack of these authorities; there is insufficient assistance available from other law enforcement agencies; and the OIGs have procedures for the proper exercise of the authorities.

[26] CIGIE is also required to maintain a website [IG Act, § 11(c)(1)(D)], https://www.ignet.gov/.

### C. PROGRAM OPERATING RESPONSIBILITIES

In the initial establishment of OIGs, the IG Act provided for the transfer of authority and resources from the respective agencies' existing audit and investigative units to the OIG [IG Act, § 9]. However, the IG Act specifically prohibits an agency from transferring "program operating responsibilities" to an OIG [IG Act, §§ 9(a); 8G(b)]. With this provision, Congress intended to insulate IGs from responsibility for running the very programs that they might review. Thus, by not performing the program responsibilities of their agencies, IGs have no vested interest in agency policies or particular programs and can remain unbiased in their review of those programs.

The statutory prohibition on the IGs having program operating responsibilities does not preclude the IG from assisting the agency and its committees and project teams, when the IG determines that such assistance will help the entity reduce fraud, waste, and abuse and such assistance by the OIG would not compromise its independence in subsequent reviews of the subject matter. For example, an IG may decline to serve as a voting member on a policy-making board or committee within the agency; however, the IG could opt to attend those meetings and provide technical assistance with respect to fraud, waste, and abuse issues or matters of economy, efficiency, or effectiveness. In this way, the IG is able to remain objective if he or she later reviews those issues and matters.

### D. LEGISLATION AND REGULATORY REVIEW

IGs are required to review existing and proposed legislation and regulations for their impact on the economy and efficiency of their agency's programs and operations and the prevention of fraud and abuse in those programs and operations [IG Act, § 4(a)(2)]. Agency heads should make sure there are procedures in place giving the OIG the opportunity to conduct these reviews. Under the IG Act, IGs communicate the results of these reviews via their semiannual report. In addition, OIGs often are asked by Congress or CIGIE to respond to direct requests for technical assistance on draft or proposed legislation.

### E. IG ACCESS TO AGENCY RECORDS; SUBPOENAS; AND RECEIPT OF ALLEGATIONS AND OATHS OR AFFIRMATIONS

In enacting the IG Act, Congress recognized that access to records would be critical to effective OIG investigations, audits, and other inquiries. In response, Congress fashioned broad authorities for OIG access to records:

*Agency Records*: Each IG is given a broad statutory right of access to all records available to their agency [IG Act, § 6(a)(1)]. The legislative history of the IG Act provides that access to "all records" is expansive and is intended to include even "confidential interagency memoranda." [27] If an agency employee refuses to provide records to the IG, the IG is to report the circumstances to the agency head immediately, and to include the incident in his/her semiannual report [IG Act, §§ 6(b), 5(a)(5)].

---

[27] S. REP. NO. 95-1071, at 33-34 (1978).

*Other Federal Agencies*:  Each IG may request information or assistance from other Federal agencies; agency heads are directed to provide such assistance or information "insofar as is practicable" and legal to do so [IG Act, §§ 6(b)].  Again, in the event of refusal, the IG is to report the circumstances to the agency head involved immediately, and to include the incident in its semiannual report [IG Act, §§ 6(b), 5(a)(5)].

*Subpoenas*:  The IG Act provides IGs with broad authority to subpoena all information "necessary in the performance of the functions assigned by [the IG] Act" [IG Act, § 6(a)(4)].  Under this authority, IGs may subpoena relevant documents and information.  However, IGs may not subpoena records from other Federal agencies.  The subpoenas are enforceable in Federal district court.

*Allegations, Complaints, and Oaths or Affirmations*:  IGs may receive allegations and complaints directly from agency employees [IG Act, § 7].  Also, IGs may take from any person an "oath, affirmation, or affidavit" when necessary in performing their duties under the IG Act. [IG Act, § 6(a)(5)].

Optimally, agency operating guidelines should clearly advise employees of their obligations to provide records to the IG and cooperate fully in investigations or audits conducted by the IG.

## F.  WHISTLEBLOWERS

Each IG is authorized to receive complaints from agency employees relating to potential impropriety in connection with agency programs and operations.  The IG may not disclose the identity of these whistleblowers, except when disclosure is "unavoidable during the course of the investigation."  Importantly, agency managers may not take action against an employee for making a complaint or disclosing information to the IG unless the disclosure was knowingly false or made with willful disregard to its truth [IG Act, § 7].

*Establishment IGs.*  Establishment IGs are required to designate a Whistleblower Ombudsman to educate employees throughout the agency about prohibitions on retaliation for whistleblowing, and educate employees who have made or contemplate making a protected disclosure about their rights and remedies against retaliation [IG Act, § 3(d)(1)(C)].

## CONCLUSION

As summarized above, OIGs are, in many ways, unique.  They are part of their particular agencies or entities, but are operationally independent.  Supervision of IGs is strictly limited and there are safeguards against their removal.  OIGs have a unique reporting relationship with the Congress and specific protections in the Federal budget process.  These and other novel attributes of IGs can present challenges for establishing and maintaining effective working relationships within a Federal agency or entity.  By providing the information set forth above concerning the functions and operations of the OIGs, this paper is intended to assist in the promotion of effective relationships between IGs and the agencies they oversee.

**Appendix 1**

**OIGs Created by the IG Act, as Amended**[28]

| OIGs in Establishment Agencies | OIGs in Designated Federal Entities |
|---|---|
| Agency for International Development | Amtrak |
| Corporation for National and Community Service | Appalachian Regional Commission |
| Department of Agriculture | Board of Governors of the Federal Reserve System and Consumer Financial Protection Bureau |
| Department of Commerce | |
| Department of Defense | Commodity Futures Trading Commission |
| Department of Education | Consumer Product Safety Commission |
| Department of Energy | Corporation for Public Broadcasting |
| Department of Health and Human Services | Defense Intelligence Agency |
| Department of Homeland Security | Denali Commission |
| Department of Housing & Urban Development | Election Assistance Commission |
| Department of the Interior | Equal Employment Opportunity Commission |
| Department of Justice | Farm Credit Administration |
| Department of Labor | Federal Communications Commission |
| Department of State and the Broadcasting Board of Governors | Federal Election Commission |
| | Federal Labor Relations Authority |
| Department of Transportation | Federal Maritime Commission |
| Department of the Treasury | Federal Trade Commission |
| Department of Veterans Affairs | Legal Services Corporation |
| Environmental Protection Agency and the Chemical Safety and Hazard Investigation Board | National Archives & Records Administration |
| | National Credit Union Administration |
| | National Endowment for the Arts |
| Export-Import Bank of the United States | National Endowment for the Humanities |
| Federal Deposit Insurance Corporation | National Geospatial-Intelligence Agency |
| Federal Housing Finance Agency | National Labor Relations Board |
| General Services Administration | National Reconnaissance Office |
| National Aeronautics & Space Administration | National Science Foundation |
| Office of Personnel Management | National Security Agency |
| Small Business Administration | Peace Corps |
| Social Security Administration | Pension Benefit Guaranty Corporation |
| Tennessee Valley Authority | Postal Regulatory Commission |
| Treasury IG for Tax Administration | Smithsonian Institution |
| U.S. Nuclear Regulatory Commission | U.S. International Trade Commission |
| U.S. Railroad Retirement Board | U.S. Postal Service |
| | U.S. Securities and Exchange Commission |

---

[28] Note that this listing was developed in January 2014 and reflects IGs in operation at that time.

**Other Offices of Inspector General**

There are also a number of Inspectors General established pursuant to statutes other than the IG Act.  These statutes may incorporate some, but not necessarily all, of the provisions of the IG Act.  For additional information concerning the specific authorities of these IGs, it is advisable to consult their web pages directly.  For reference, a listing of these OIGs is set out below:[29]

| **OIGs** | **Authorizing Legislation** |
|---|---|
| Architect of the Capitol | 2 U.S.C. § 1808 |
| Central Intelligence Agency | 50 U.S.C. § 3517 |
| Government Printing Office | 44 U.S.C. § 3901 |
| Library of Congress | 2 U.S.C. § 185 |
| Office of the Intelligence Community IG | 50 U.S.C. § 3033 |
| Special IG for Afghanistan Reconstruction | National Defense Authorization Act for FY 2008, Pub. L. No. 110-181, § 1229(b) (Jan. 28, 2008) |
| Special IG for Troubled Asset Relief Program | Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, § 121 (Oct. 3, 2008) |
| U.S. Capitol Police | 2 U.S.C. § 1909 |
| U.S. Government Accountability Office | 31 U.S.C. § 705 |

---

[29] Note that this listing was developed in January 2014.  Also, it may not be an exhaustive listing of all OIGs that have been created by authorities other than the IG Act.

**Appendix 2**

**Office of Inspector General's Fiscal Year Budget Request**

The Inspector General Reform Act of 2008 (Pub. L. No. 110-409) was signed by the President on October 14, 2008. Section 6(f)(1) of the Inspector General Act of 1978, 5 U.S.C. app. 3, was amended to require certain specifications concerning Office of Inspector General (OIG) budget submissions each fiscal year.

Each Inspector General (IG) is required to transmit a budget request to the head of the establishment or designated Federal entity to which the IG reports specifying:

- the aggregate amount of funds requested for the operations of the OIG,
- the portion of this amount requested for OIG training, including a certification from the IG that the amount requested satisfies all OIG training requirements for that fiscal year, and
- the portion of this amount necessary to support the Council of the Inspectors General on Integrity and Efficiency (CIGIE).

The head of each establishment or designated Federal entity, in transmitting a proposed budget, via OMB, to the President for approval, shall include:

- an aggregate request for the OIG,
- the portion of this aggregate request for OIG training,
- the portion of this aggregate request for support of the CIGIE, and
- any comments of the affected IG with respect to the proposal.

The President shall include in each budget of the U.S. Government submitted to Congress:

- a separate statement of the budget estimate submitted by each IG,
- the amount requested by the President for each OIG,
- the amount requested by the President for training of OIGs,
- the amount requested by the President for support of the CIGIE, and
- any comments of the affected IG with respect to the proposal if the IG concludes that the budget submitted by the President would substantially inhibit the IG from performing the duties of the OIG.

**Appendix 3**

# OIGs WITH LAW ENFORCEMENT AUTHORITIES

Agency for International Development
Amtrak
Board of Governors of the Federal Reserve and Consumer Financial Protection Bureau
Corporation for National and Community Service
Department of Commerce
Department of Education
Department of Energy
Department of Health and Human Services
Department of Homeland Security
Department of Housing and Urban Development
Department of the Interior
Department of Justice
Department of Labor
Department of State and the Broadcasting Board of Governors
Department of Transportation
Department of the Treasury
Department of Veterans Affairs
Environmental Protection Agency and the Chemical Safety and Hazard Investigation Board
Export-Import Bank of the United States
Federal Deposit Insurance Corporation
Federal Housing Finance Agency
General Services Administration
National Archives and Records Administration
National Aeronautics and Space Administration
National Science Foundation
Office of Personnel Management
Peace Corps
Securities and Exchange Commission
Small Business Administration
Social Security Administration
Special IG for Afghanistan Reconstruction
Special IG for Troubled Asset Relief Program
Tennessee Valley Authority
U.S. Nuclear Regulatory Commission
U.S. Railroad Retirement Board

In addition to the above there are four additional OIGs with law enforcement authority—Department of Agriculture, Department of Defense, U.S. Postal Service, and Treasury IG for Tax Administration.  These four OIGs derive their law enforcement authority from legislation other than the IG Act of 1978, as amended.  Further, some OIGs have personnel that have received special deputation from the U.S. Marshall Service.