**IN THE UNITED STATES**
**FOR THE DISTRICT OF COLUMBIA**

ROBERT P. STORCH, et al.,                      |
                                               |
    *Plaintiffs*,                          |
                                               |   Civil Action No. 1:25-cv-415
v.                                             |
                                               |   Judge Ana C. Reyes
PETE HEGSETH, in his official capacity         |
as Secretary of Defense, et. a.,               |
    *Defendants*.                          |

---

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE A STATUS AND TO
COMPEL ENFORCEMENT OF WHISTLEBLOWER PROTECTIONS & REMEDIES FOR
FEDERAL CONTRACTORS

## TABLE OF CONTENTS

EXECUTIVE SUMMARY

INTRODUCTION

JURISDICTION AND AUTHORITY

STATUS UPDATE: FINANCIAL HARDSHIP

- Navy Federal Credit Union – Mortgage Foreclosure
- IRS Statements – Account Statements (IRS.gov vs. Bogus Statements)
- Employment Update: New Job (June 9, 2025)

EVIDENCE OF REPRISALS & RETALIATION

- Withholding IRS Whistleblower Reward Fees
- IRS.gov Transcript & Account Tampering
- Background Investigation & Personnel File Manipulation
- FOIA: *Gyamfi v. Defense Counterintelligence Security Agency*
- Others Impacted:
    - o Veterans: The Case of Major Cecil Davis, Ret. Air Force Officer
    - o Elderly Citizens: The Carol Hinders Story
    - o Judicial Officers
        - ▪ U.S. District Judge Deborah Boardman
        - ▪ Justice Brett Kavanaugh

EXHAUSTION OF ADMINISTRATIVE REMEDIES

PRAYER FOR RELIEF

CONCLUSION

EXHIBITS

## EXECUTIVE SUMMARY

This administrative motion seeks the urgent intervention of this Honorable Court to compel the enforcement of critical whistleblower protections afforded to federal contractors under Title 41 U.S.C. § 4712, particularly the "Prohibition of Reprisals" clause outlined in Section (a)(1). The Petitioner, O. Kwame Gyamfi, a federal whistleblower who previously attempted to bring these matters to the attention of this Court as an *amicus curia*, has suffered severe financial hardship, including the foreclosure of his home, as a direct consequence of the executive branch's failure to enforce these statutory protections.

As detailed in this Memorandum, the Petitioner's Congressional representative, Congressman Steny Hoyer, diligently sought remedies to enforce Section A of the Whistleblower Protection Act ("WPA") under Title 41 U.S.C. § 4712(a)(2)(A). Despite these efforts, his legislative authority was demonstrably unable to compel the executive branch to enforce Section (a)(1), thereby leaving the Petitioner vulnerable to ongoing reprisals. This lack of enforcement by entities vested with oversight, including Congress and relevant Inspectors General (41 U.S.C. § 4712(a)(2)(B)), has created a financial hardship situation for the Petitioner.

Given the exhaustion of administrative and congressional avenues, and the severe, ongoing harm sustained by the Petitioner, this motion respectfully requests that the Court exercise its jurisdiction to issue an order mandating the Defendant(s) to enforce Title 41 U.S.C. § 4712(a)(1), ensuring the cessation of reprisals and the provision of appropriate relief to the Petitioner.

## INTRODUCTION

This Memorandum details the compelling reasons for this Honorable Court's immediate intervention to protect a federal whistleblower from ongoing harmful actions. It will establish the legal foundation for the Court's jurisdiction, thoroughly describe the severe forms of retaliation the Petitioner has endured, and demonstrate the exhaustive, yet ultimately unsuccessful, pursuit of all available administrative and congressional remedies.

A cornerstone of this matter rests upon the Whistleblower Protections for Federal Contractors statute, Title 41 U.S.C. § 4712. This Act specifically empowers entities such as a Member of Congress (Section (a)(2)(A)) to advocate for whistleblowers. This Memorandum will assert that this Court possesses the clear jurisdiction and legal authority to adjudicate this dispute. Both the Court and relevant government agencies share a fundamental interest and obligation to address whistleblower claims, as such claims are integral to ensuring the effective oversight conducted by Inspector Generals.

The subsequent sections will meticulously detail the egregious reprisals and acts of retaliation suffered by the Petitioner following his protected disclosures to regulatory authorities. These harmful actions include, but are not limited to, unauthorized tampering with his IRS.gov account, the wrongful withholding of legitimate IRS Whistleblower Reward Fees, the unlawful bank garnishments, the execution of illegal wage garnishments, and the manipulation of his personnel records during background investigations. Each of these actions represents a direct assault on the Petitioner's financial stability, professional standing, and personal integrity.

Finally, this Introduction sets forth the comprehensive account of the Petitioner's diligent efforts to exhaust all administrative avenues for redress. This includes the dedicated, though regrettably

unsuccessful, support and advocacy provided by Congressman Steny Hoyer's office. **This protracted and unaddressed failure to enforce statutory protections directly led to the Petitioner experiencing severe financial hardship, culminating in the foreclosure of his home.** This exhaustive process underscores the critical necessity for this Court's direct judicial intervention to compel the enforcement of these vital federal protections.

## JURISDICTION AND AUTHORITY

This Court possesses mandatory jurisdiction to consider and enforce whistleblower protections under 41 U.S.C. § 4712. Specifically, § 4712(c)(4) provides that if an employer fails to comply with corrective orders issued under this statute, "the agency or the complainant may file an action for enforcement in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy". This jurisdictional grant is not discretionary—it imposes a statutory duty on this Court to ensure the enforcement of rights and protections afforded to whistleblowers under federal law.

Section 4712(a)(2)(F) further reinforces the Court's authority by expressly recognizing the court itself as a protected recipient of whistleblower disclosures. Unlike traditional amicus curiae participation, which is typically limited to the filing of briefs, § 4712(a)(2)(F) creates a statutory basis for direct court involvement whenever protected disclosures are made to the court. This statutory framework transcends traditional standing requirements, as it authorizes the court— rather than a party or amicus—to receive and act upon relevant information concerning whistleblower retaliation and misconduct.

The factual foundation for invoking the Court's enforcement authority is established by the evidence of Inspector General malfeasance and dereliction of duties presented in this matter. The

failure to address such misconduct not only undermines the integrity of federal contracting but also constitutes retaliation against whistleblowers, in direct violation of the protections mandated by § 4712. Accordingly, this Motion is framed as an enforcement action under 41 U.S.C. § 4712, rather than a traditional amicus request, and seeks the Court's intervention to compel compliance with statutory whistleblower protections.

In sum, this Court is statutorily obligated to hear and act upon matters involving whistleblower protections under 41 U.S.C. § 4712, and the present Motion properly invokes that mandatory jurisdiction and enforcement authority.

**STATUS UPDATE: FINANCIAL HARDSHIP**

On March 19, 2024, the whistleblower initiated a cyber incident report (CIR) with the Department of the Interior's Cybersecurity Division, citing protections under 41 U.S.C. § 4712. Concurrently, the whistleblower sought assistance from his congressional representative, who formally joined the administrative claim under the Whistleblower Protection for Federal Contractors Act (WPA), specifically invoking 41 U.S.C. § 4712(a)(2)(F), which permits the participation of members of Congress as a party to the administrative case (See Exhibit A).

Tragically, on October 31, 2024, the whistleblower was terminated from his federal contractor position as a software engineer. Immediate notification was made to the Congressman, urging the enforcement of Section A of the WPA to secure appropriate redress for the whistleblower. Consequently, congressional staff diligently worked to enforce the WPA, pursuing: 1) back pay and compensation, 2) job reinstatement, and 3) an agency right-to-sue letter and authorization (See Exhibit B). Regrettably, these efforts with the Department of the Interior's Office of the Secretary, Chief of Staff, proved unsuccessful.

Subsequently, severe financial hardship led to foreclosure proceedings against the whistleblower's home (See Exhibit C). However, the whistleblower would have retained sufficient financial resources to avert foreclosure proceedings if the congressional staff's efforts to enforce the whistleblower protections had been successful.

Furthermore, the whistleblower sought assistance from the defendant's counselor of record, requesting that the Department of Justice (DOJ) intervene and provide assistance to the Congressional staffer (See Exhibit D). These efforts were ignored and proved fruitless, with no communication or reply to the whistleblower's request.

**Navy Federal Credit Union: Foreclosure Notice**

Therefore, the plaintiff notified Navy Federal Credit Union about his financial circumstances and advised the institution that he was a whistleblower involved in a legal matter, and that his Congressional representative was assisting him with "job reinstatement and back pay" (See Exhibit E). Hence, due to the ineffective actions of his congressional representative and the inaction of the DOJ, the whistleblower reluctantly brings this action before this honorable court, seeking assistance to Order the DOJ's intervention and enforcement of the WPA agreements before this court.

The whistleblower believes that he has exhausted all agency remedies with the Department of the Interior (DOI), Department of Labor (DOL), and Internal Revenue Service (IRS). In fact, the whistleblower has experienced severe retaliation and reprisals whenever he sought to enforce his rights at the agency level. Therefore, this motion will present evidence of Inspector General (IG) malfeasance and federal agencies' failure to enforce statutory and regulatory actions. This evidence

will support the whistleblower's claims of retaliation and reprisals that clearly violate the whistleblower protections afforded federal staff.

**IRS Statements – False Outstanding Balances**

Recent statements from the IRS further exacerbate the whistleblower's financial hardship by fraudulently asserting a debt. The latest statement stipulates that the whistleblower owes a remaining tax debt of -$129,302 and sets a deadline of September 12, 2005, to dispute this amount (See Exhibit F-A). This notice will, in part, serve as a formal argument and dispute of this tax charge. Another statement mailed to the Whistleblower states that the Whistleblower owes a total of $-129,302.55 (See Exhibit F-B), while another statement stipulates that the Whistleblower owes $-42,395.17[1] (See Exhibit F-C)[2]. In fact, the whistleblower will provide evidence that the IRS, in fact, owes the Whistleblower a substantial amount of financial IRS Whistleblower reward fees he filed under IRC Title 26 Sect. 7623(b) from two cases totaling over $100+ million[3].

The financial manipulation of the whistleblower's IRS accounts (See Exhibit G) is just one facet of a broader pattern of reprisals and retaliation, which will be detailed in the upcoming evidence & reprisals section.

Therefore, this motion will present evidence that further supports evidence of Inspector General (IG) malfeasance and leadership failure within agencies' inability to enforce statutory and

---

[1] Exhibit F-C is the original bogus document the Whistleblower reported to the U.S. Attorney, The Hon. Rod Rosenstien in the matter of Gyamfi v. USA (See U.S. Sup. Ct., *Gyamfi. v USA* No. 10-1524).
[2] Exhibit F-C includes an exhibit addendum of an example of how taxpayers information is disseminated publicly, whereas tax attorneys uses this information to target unsuspecting taxpayers with the bogus judgements. This attorney was bold enough to text message the whistleblower to his personal cell phone.
[3] See Section: Evidence of Reprisals and Retaliation – Withholding of IRS Whistleblower Rewards Fees

regulatory protections. In closing, the evidence will support the whistleblower's claims of a gross pattern of violations of whistleblower protections of federal staff and contractors.

**Employment Update: New Job (June 9, 2025)**

The whistleblower is pleased to report that he successfully began new employment on June 9, 2025. This position has provided the resources needed to start catching up on bills and mortgage arrears. This progress has been made despite the failure of Congressman Hoyer's staff to compel the Department of the Interior (DOI) to provide restitution— including back pay, job reinstatement, and a "right to sue" letter— as required under the Whistleblower Protection Act (WPA).

**EVIDENCE OF REPRISALS AND RETALIATION**

This section details the pattern of reprisals and retaliation experienced by the whistleblower, specifically focusing on actions taken to financially devastate him through the withholding of earned IRS Whistleblower Reward Fees and the imposition of unlawful financial burdens.

**Withholding IRS Whistleblower Reward Fees**

The whistleblower initiated two significant cases with the Internal Revenue Service (IRS) Whistleblower Office under the provisions of the Tax Relief and Health Care Act of 2006. These actions were undertaken with the encouragement of U.S. Treasury officials at the Financial Crimes Enforcement Network (FINCEN), who indicated that FINCEN's whistleblower fees were inadequately appropriated by Congress. In contrast, the IRS Whistleblower Office offered a shared arrangement between the Treasury and the whistleblower, entitling the whistleblower to approximately 30% of the recovered funds[4].

---

[4] https://www.irs.gov/compliance/the-whistleblower-law

The combined efforts in these two cases resulted in a substantial recovery for the U.S. Treasury, totaling $160 million and $175 million, respectively, for an aggregate sum of $335 million. Based on the statutory sharing arrangement, the whistleblower's portion of these rewards combined is approximately $100.5 million. This combined payout would constitute the second-largest IRS Whistleblower reward fee payout in history[5].

Despite the successful recovery of these significant funds for the U.S. Treasury, officials at the agency level have unlawfully withheld these reward fees. Instead of facilitating the rightful disbursement, these officials have engaged in a relentless and concerted effort to financially devastate the whistleblower. This campaign includes, but is not limited to, tampering with his IRS transcripts and pursuing fraudulent levies and liens against his property, wages, and bank accounts using "fake" court orders, liens, and levies. The following evidence substantiates these egregious tactics.

**IRS.gov Transcript Tampering**

Further evidence of financial devastation tactics is found in the manipulation of the whistleblower's IRS tax transcripts. This section highlights a critical discrepancy between the official IRS.gov system and what appears to be a "Trojan Horse" transcript system embedded within the IRS "IT" Division.

With the assistance of an IRS "insider" possessing direct knowledge of the legitimate IRS.gov system, the whistleblower gained insight into the exploitation of the IRS "Individual Master File" (IMF). The IMF tax file is the central repository for the tax records and accounts of all U.S.

---

[5] See Docket #42, STORCH v. HEGSETH. K. Gyamfi, amicus brief, see pg 12-17, for additional details, See also, Gyamfi v. Wells Fargo - Wachovia (Sup. Ct., No. 11-774)

taxpayers. The IRS insider revealed that "bad actors" can create duplicate records by making a copy of the IMF, enabling them to target unsuspecting taxpayers by manipulating their tax records and payment history.

The insider encouraged the whistleblower to activate his **IRS.gov** account and meticulously compare the transcripts available there with his legacy records and payment history. The evidence of this manipulation is strikingly clear: approximately $+160,000 garnished from his wages while working at the Department of Labor[6] ,however those garnishments are not accounted for in his official **IRS.gov** transcripts (See Exh G, see pg. 11-14).

The above transcripts captured a limited number of credited payments made from the Dept. of Labor payroll garnishments (See short arrows, pg. 16). However, those payments were debited from the account in the form of "Interest" and "Penalties". These debited entries would immediately wipe out any credited payments (See long arrows, pg 16) to this account. These accounts are managed by Trojan horse servers whereas, bad IRS actors and staff can manipulate the numbers which keeps the taxpayers in perpetual debt.

In stark contrast, a "legacy transcript" obtained from one of the IRS satellite offices in Largo, Maryland (hereinafter referred to as "Transcripts B", see pg. 15) unequivocally reveals the tampering of the transcripts and payments. Transcripts A, as presented on IRS.gov, falsely give the appearance to an unsuspecting revenue officer that the whistleblower is delinquent for non-payment of his tax obligations. However, Transcripts B reveal that the bi-weekly payments, clearly reflected on the whistleblower's payroll stubs for a period of two and a half years while at the Department of Labor, were indeed garnished but were never credited to his taxpayer transcripts.

---

[6] See Docket #42, STORCH v. HEGSETH. Amicus brief, See pg 17-20, for more additional details, See also, Gyamfi v. Acosta et. al. (Sup. Ct., No. 18-1377)

Instead, it appears that these legitimate payments were debited with exorbitant penalties and interest, effectively "wiping" each payment off the books. This discrepancy powerfully illustrates the use of "Trojan Horse" systems embedded within the IRS agency that obscure legitimate payments thus keeping the taxpayer in preputial debt.

## Background Investigation & Personnel Security File Manipulation

This section details the manipulation of the whistleblower's Personnel Security file and credit report during a background investigation. This tactic was designed to obstruct his employment opportunities to present the appearance that the Whistleblower had credit issues. The focus here is on how personnel security officers actively manipulate the records of "new hire" employees during background investigations utilizing the credit bureaus reporting agency reports.

The whistleblower became a direct target of this scheme. However, leveraging his background in cybersecurity and prior work at the Inspector General's office, he immediately filed a whistleblower claim detailing a complex financial debt collection scheme. This scheme involves Department of the Interior (DOI) security officers manipulating the credit reports of unsuspecting employees and contractors. The manipulation creates the false appearance that the new hire possesses a credit card debt that must be paid, or for which payment arrangements must be initiated with financial institutions. Without evidence of such payment arrangements, the individual would be deemed unable to obtain the necessary security clearance for the prospective job.

This specific case was thoroughly documented with Congressman Hoyer, who joined (See Exh A) the case at its initial submission stage, and it remains a part of the administrative record under the Whistleblower Protection Act, which permits congressional participation. The whistleblower highlights this matter because, despite Congressman Hoyer's involvement, he was unable to

compel the agency to comply with the statutory provisions of the WPA to 1) reinstate the whistleblower in his prior position and 2) force the agency to provide back pay for his lost salary. This inability of a sitting Congressman to secure agency compliance with a clear act of Congress underscores the severity of the agency's defiance and the systemic nature of the reprisals.

Consequently, the whistleblower was successful in securing employment in a challenging job market, burdened by significant concerns regarding background investigations. He fears that background investigators will rely on the falsified records, leading his employer to erroneously assume he is a "tax cheat" owing thousands to the IRS, in addition to outstanding credit card debt. These demonstrably falsified records would undoubtedly prevent the whistleblower from obtaining favorable background investigations & security clearances, therefore limiting his career prospects.

**FOIA :** *Gyamfi v. Defense Counterintelligence and Security Agency*

On or around February 2024, the whistleblower filed a FOIA request from the Defense Counterintelligence and Security Agency (DCSA). Upon a review of his OPM personnel record, the evidence affirmed the malfeasance of the Personnel Security officer that he indeed tampered with the Whistleblower's "New Hire" file by falsifying the personnel security record[7] (See Exhibit H[8]). However, the Whistleblower sought a more comprehensive review of his personnel records and filed a FOIA request to unseal the redacted sections of his OPM files; whereas the Federal Bureau of Investigations (FBI) sealed portions of his personnel files.  This matter was filed in the U.S. District Court of Maryland before Judge Boardman. Hence, the Whistleblower sought a full

---

[7] See Docket #42, *STORCH v. HEGSETH*. Amicus brief, See pg 21-22, for more additional details
[8] The DCSA letter stated that the FBI redacted portions of the record per Privacy Act exemptions under (j)(2) and FOIA exemptions (b)(7)(E). Thus, the whistleblower challenged these exemptions in the matter of Gyamfi v. DCSA, FBI (See Civ. DLB-24-925 USDC-MD)

disclosure of his records to determine whether or not the FBI meetings he had with Special Agents of the FBI had been properly filed and investigated. These disclosures involved matters related to: 1) *the Wells Fargo-Wachovia Bank whistleblower case that was filed with the U.S. Treasury financial regulators* and 2) *disclosures submitted to the FBI Task Force[9] investigating matters into Justice Brett Kavanaugh during his U.S. Senate Judicial confirmation to the U.S. Supreme Court.* These matters were never determined, as the matter was escalated to the U.S. Court of Appeals for the 4th Circuit. The FBI-FOIA officer never provided the Whistleblower with an un-redacted version of his FBI files.

**A Systemic Cyber Issue: The State of Maryland**

The issues detailed herein, particularly concerning the "Trojan Horse" systems, extend far beyond the whistleblower's individual experience, demonstrating a systemic problem impacting the public. The whistleblower, using his "iSonar" fraud detection software system, conducted a forensic financial analysis of fake tax liens in the state of Maryland, specifically within Prince George's County and Howard County. This analysis indicated that these "Trojan servers" were generating, on average, over $100 million annually through fraudulent means (See Bar Graph). The targeted demographic was broad, encompassing individuals, churches, non-profit organizations, veteran organizations, financial institutions, and law firms, among others. Furthermore, the reach of these "Trojan Horse" systems extends beyond Maryland, targeting veterans, the elderly, and even federal

---

[9] President Donald Trump (1st Term, 2019), instructed the FBI to establish a Public Task Force, that solicited disclosures from the public regarding the confirmation of Judge Brett Kavanaugh.
https://thehill.com/homenews/administration/409300-white-house-authorizes-fbi-to-expand-kavanaugh-investigation-report/
- https://www.uscourts.gov/courts/ca10/10-18-90105.pdf
- https://www.ca10.uscourts.gov/ce/tenth-circuit-judicial-council-issues-order-complaints-against-justice-brett-m-kavanaugh

judges across different states. Hence, in the proceeding cases, the Whistleblower was directly involved assisting the Air Force veteran and elderly restaurant owner. In addition, on matters involving the judicial officers, the whistleblower is a party to the cases and alleges that these officers are victims of judicial identity thief.



(Maryland annual "Fake Tax Liens" of tax dollars - Bar Graph)

**Military Veterans: Major Cecil Davis, Ret. AF (Alabama)**

Major Cecil Davis, a resident of Alabama, is a retired Air Force Officer and Vietnam Veteran. He has been targeted with fake liens and levies against both his Defense Finance and Accounting Service (DFAS) retirement and PNC banking accounts. The whistleblower, acting as a veteran advocate with the Sons of the American Legion (a grassroots veteran advocacy organization affiliated with the American Legion), opened a case with the organization and Congressman Hoyer

to work with DFAS on behalf of Major Davis. However, given Congressman Hoyer's office's prior ineffectiveness in handling matters of fraud, the whistleblower informed the Congressman's case manager that he wished to pause congressional support until a direct meeting could be arranged with the Congressional District Manager of Congressman Hoyer (See Exhibit I)

**The Elderly: The Carol Hinders Story (Iowa)**

The whistleblower brought the Carole Hinders[10] case, an elderly Iowan, to the attention of U.S. Senator Chuck Grassley through a local reporter in Iowa, leading to a meeting with the Senate Judiciary Investigation Committee (See Exhibit J[11]). In that meeting, the whistleblower presented evidence that, behind the official "asset forfeiture" cover story, Ms. Hinders was in fact the victim of a targeted IRS scam. Her bank account had been compromised using fictitious IRS documents in a "Trojan horse" scheme orchestrated by state and federal bad actors, demonstrating the abuse of personal financial data under the guise of lawful enforcement.

**Judicial Officers as Victims**

*Justice Brett Kavanaugh*

In the fall of 2018, President Donald Trump nominated Judge Brett Kavanaugh to the United States Supreme Court. At that time, Senator Charles Grassley, as Chairman of the Senate Judiciary Committee, oversaw the confirmation process. Prior to the hearings, the whistleblower submitted a formal notice to Chairman Grassley and each member of the Committee, advising that Judge Kavanaugh had appeared as one of the appellate judges of record in the Wachovia whistleblower matter involving missing IRS whistleblower reward payments. On September 12, 2018, copies of

---

[10] https://ij.org/case/iowa-forfeiture/ ,

[11] See meeting notes and attendees of members of the Judiciary Committee (March 25, 2015)

the "Kavanaugh files" were hand-delivered to all Committee offices, apart from Senator Patrick Leahy's staff, who declined to accept them (See Exhibit M). On September 13, 2018, Senator Dianne Feinstein confirmed receipt of confidential materials from "an individual…that requested confidentiality" (See Exhibit N).

Subsequently, allegations of sexual assault were raised against Judge Kavanaugh, and President Trump directed the Federal Bureau of Investigation (FBI) to receive and review any relevant evidence submitted by the public. On October 3, 2018, the whistleblower submitted documentation regarding the Wachovia whistleblower case and supporting exhibits to the designated FBI task force (See Exhibits O-A, O-B).

Upon later review, the whistleblower has concluded that Judge Kavanaugh's appearance on the docket of the IRS whistleblower case may have been the result of "Judicial Identity Theft," whereby his name and judicial role were affixed to a decision in which he had no actual participation or awareness. If correct, this would indicate the use of "robo-signed and institutional cat-phishing" of fraudulent judicial orders designed to obscure financial irregularities by attributing them to unsuspecting members of the federal judiciary.

This matter underscores a broader systemic risk: judicial officers themselves may be targeted by compromised or manipulated systems that exploit their official identity, thereby both undermining the integrity of the judicial process and placing their personal and professional credibility at risk.

[12]*U.S. District Judge, Deborah Boardman*

The case of Justice Kavanaugh illustrates that Judicial Officers may themselves become targets of "Trojan Horse" systems designed to exploit their likeness for illicit purposes. This same pattern of

---

[12] *See Gyamfi v. Defense Counterintelligence and Security Agency, et. al (8:24-cv-925-DLB)*

judicial identity theft is further reflected in the experience of U.S. District Court Judge Deborah Boardman in connection with a Freedom of Information Act (FOIA) matter.

Judge Boardman presided over the whistleblower's FOIA case, *Gyamfi v. Defense Counterintelligence and Security Agency and the Federal Bureau of Investigation* (or *Gyamfi v. DCSA, et al.*), filed on March 29, 2024. The matter involved the FBI's redaction of portions of the whistleblower's personnel file (See Exhibit H). In a status report to Judge Boardman, the whistleblower documented meetings with both IRS TIGTA Special Agents and FBI Special Agents (See Exhibit J). Shortly thereafter, the whistleblower was informed that a court order had been issued directing him to submit a summons.

Believing that the order contained a falsified signature, the whistleblower filed a Judicial Complaint against the lower court, alleging that Judge Boardman had been the victim of "judicial identity theft" because her signature appeared to have been digitally manipulated and affixed to the order (See Exhibit K). The whistleblower further advised the Judicial Committee that the Maryland District Court was undergoing "NextGen" software updates at the time. Upon comparison, the allegedly altered signature did not match the format used in other "NextGen" orders—specifically, criminal conviction orders issued against January 6 defendants in the U.S. District Court for the District of Columbia.

To further substantiate this claim, the whistleblower ran a PACER system report using Judge Boardman's likeness and identified another case bearing the identical manipulated signature (See Exhibit K). When presented with this evidence, the En Banc judicial panel dismissed the matter by order signed not by a judge, but by the secretary of the clerk (See Exhibit L).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

During the Obama Administration, the whistleblower led the White House *Open Government* initiative at the Department of Labor[13]. This role included multiple consultations with White House staff overseeing the interagency task force charged with advancing transparency and accountability in federal operations. At that time, the whistleblower could not have anticipated that the Department of Labor's Office of Inspector General (OIG) would later disregard his efforts to enforce Wage and Hour Division oversight of the unlawful garnishment of federal employees' and military personnel's wages by the Defense Finance and Accounting Service (DFAS) within the Department of Defense (DoD)[14].

The Whistleblower Protection Act (WPA), codified principally at 41 U.S.C. § 4712, embodies Congress's intent to protect federal whistleblowers from reprisal and to ensure that disclosures of waste, fraud, and abuse are met with corrective action rather than retaliation. The statute reflects Congress's recognition that strong whistleblower protections are essential to transparency, accountability, and the responsible stewardship of public funds. Section 4712 specifically enumerates multiple avenues of disclosure—including Inspectors General, agency heads, the Attorney General, and Members of Congress—through which whistleblowers may lawfully report misconduct and invoke statutory protections.

In the present matter, the whistleblower has diligently pursued and exhausted nearly every administrative remedy available under Section 4712. He has made disclosures to Inspectors General, engaged with agency leadership, and sought intervention by a sitting Member of Congress. The only statutory avenues not invoked are subsection (F), involving disclosures "to a

---

[13] https://obamawhitehouse.archives.gov/open

[14] See U.S. Sup. Ct (Gyamfi v. Acosta, et. al. No. 18-1377)

court or grand jury,". This record establishes a comprehensive and good-faith attempt to obtain redress through the channels envisioned by Congress.

Despite these efforts, the administrative framework has failed to provide the protections and remedies mandated by law. As detailed elsewhere in this brief, the agencies involved have persistently disregarded statutory requirements, including the withholding of whistleblower reward fees, the tampering of Office of Personnel Management (OPM) records, and the manipulation of IRS transcripts. Even direct congressional intervention has proven insufficient to compel agency compliance with a clear act of Congress.

Accordingly, the whistleblower has exhausted all practical and statutory administrative remedies. In the absence of relief through the prescribed channels, he is compelled to seek the intervention of this Honorable Court to enforce his rights under the WPA and to obtain the relief to which he is lawfully entitled.

**PRAYER FOR RELIEF**

The paramount aim of the Whistleblower Protection Act (WPA) is to safeguard individuals who, at great personal risk, disclose fraud, waste, and abuse within the federal government and its contracting apparatus. A core tenet of this statutory protection is to ensure that such disclosures do not result in financial ruin or personal hardship for the whistleblower.

Despite the clear intent of Congress and the whistleblower's exhaustive efforts to pursue the administrative remedies prescribed by the WPA, he now faces severe financial hardship as a direct consequence of agency noncompliance. The whistleblower intends to continue pursuing accountability before the newly appointed Inspectors General of the Department of Labor, the

Department of the Interior, the Treasury Inspector General for Tax Administration, and the Department of Justice.

Nevertheless, it is imperative that this Honorable Court compel the defendants to enforce the WPA and provide the remedies Congress expressly intended, including immediate financial restitution. Specifically, the whistleblower seeks:

(*See Exhibit P: Financial Statement of what is owed to the Whistleblower*):

1. The full accounting and release of all **Internal Revenue Service Whistleblower Reward fees**, as well as the removal of all fraudulently imposed fees from his Account Transcripts.
2. **Salary backpay** and the issuance of a **right-to-sue letter** from the Department of the Interior.
3. **Salary backpay and full compensation** from the Department of Labor.

Furthermore, the whistleblower respectfully requests that this Court exercise the full powers vested in it under the WPA and its inherent judicial authority to ensure enforcement of these statutory protections, and to grant such other and further relief as the Court deems just and proper to remedy the harms suffered and to preserve the integrity of federal whistleblower protections.

**CONCLUSION**

The narrative presented herein underscores a profound failure in the administrative mechanisms designed to uphold the **Whistleblower Protection Act**. Congress enacted the WPA to serve as a vital bulwark against fraud, waste, and abuse, ensuring that those who bravely expose such malfeasance are shielded from reprisal and financial devastation. The whistleblower's journey, marked by exhaustive engagement with administrative channels and direct congressional involvement, tragically illustrates that these intended safeguards have proven insufficient. The

resulting **financial hardship** is a direct and unacceptable outcome that the WPA was specifically designed to prevent.

Given the systemic nature of the alleged reprisals, documented record manipulation, and the inability of administrative and even congressional intervention to secure compliance, the role of this Honorable Court becomes **crucial**. Its intervention is essential to rectify these injustices and reaffirm the foundational principles of the WPA.

Therefore, it is respectfully submitted that this Court's engagement must extend beyond mere participation. To truly ensure justice and prevent future abuses, this Court should assert its inherent authority to **supervise the administrative process**, compelling the Department of Justice and other relevant federal entities to rigorously **enforce the WPA rights** of the whistleblower. Such judicial oversight is necessary not only to secure the specific remedies sought but also to send an unequivocal message that the rule of law, particularly concerning whistleblower protections, will be upheld and enforced.

Respectfully submitted,                                    Dated: September 8, 2025

**Kwame Gyamfi,**
**P.O. Box 1613,**
**Bowie, MD 20716**
kwamegyamfi@me.com