**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT P. STORCH, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PETE HEGSETH, in his official capacity as Secretary of War, *et al.*,<br><br>Defendants. | Civil Action No. 25-415 (ACR) |

**DEFENDANTS' NOTICE OF ANTICIPATED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Paragraph 7(f) of this Court's Standing Order, ECF No. 6, Defendants hereby request a pre-motion conference and give notice that they intend to file a Motion for Summary Judgment on Plaintiffs' claims.

## BACKGROUND

Plaintiffs were Inspectors General of eight departments or agencies. *See* Compl. ¶¶ 15-28, ECF No. 1. On January 24, 2025, President Trump removed each of the Plaintiffs. *Id.* ¶ 71. Plaintiffs filed this lawsuit to challenge their removal. Plaintiffs claim that their removal violated a congressional notice provision in the Inspector General Act (IG Act). 5 U.S.C. § 403 note; 5 U.S.C. § 403(b)(1)(A). They seek review under the Administrative Procedure Act (APA), Compl. ¶ 91 (Count I), review of *ultra vires* action, *id.* ¶ 94 (Count II), and mandamus relief, *id.* ¶ 100 (Count III). Plaintiffs moved for a preliminary injunction, seeking reinstatement. ECF No. 14. This Court denied that motion, holding that Plaintiffs had not shown irreparable harm. Mem. Op. 13-17, ECF No. 54. The Court also stayed this case pending the Supreme Court's resolution of *Trump v. Slaughter*, No. 25-332 (U.S.). *See* Mem. Op. 19. On June 29, 2026, the Supreme Court decided *Slaughter*, holding that removal protections for commissioners of the Federal Trade Commission violated the separation of powers. *See Trump v. Slaughter*, 609 U.S. ---, 2026 WL 1855612, at *21 (June 29, 2026). The parties then indicated that they intend to file cross-motions for summary judgment. *See* Joint Status Report, ECF No. 58.

## SUMMARY OF BASIS FOR ANTICIPATED MOTION

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Count I fails at the threshold. Because the IG Act contains no cause of action for removed Inspectors General, Plaintiffs seek review "under the APA." Compl. ¶ 91. The APA only allows

review of "agency action," 5 U.S.C. § 702, but Plaintiffs were removed by the President, who is not an agency under the APA, *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992).

Counts II and III are subject to demanding legal standards. *Ultra vires* review "applies only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute," making it the judicial equivalent of "a Hail Mary pass." *NRC v. Texas*, 605 U.S. 665, 681 (citations omitted). "To establish entitlement to mandamus relief, the plaintiff must demonstrate 1) a clear and indisputable right to the particular relief sought against the federal official, 2) that the federal official is violating a clear duty to act, and 3) that the plaintiff has no adequate alternate remedy." *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023).

Plaintiffs' claims fail on the merits for multiple reasons. First, they lack a cognizable claim under the IG Act. The IG Act flatly states that "[a]n Inspector General may be removed from office by the President." 5 U.S.C. § 403(b)(1)(A). Although it also states that the President shall provide a rationale to Congress 30 days before the removal, *id.*, that notice provision is for the benefit of Congress and does not give Inspectors General a cognizable right to challenge their removal. In *Natural Resources Defense Council v. Hodel*, 865 F.2d 288 (D.C. Cir. 1988) (opinion of Ginsburg, R.B., J., Starr, J., and Sentelle, J.), the D.C. Circuit held that "congressional reporting requirements are, and heretofore have been, a management tool employed by Congress for its own purposes," and that the Court would not review plaintiffs' claims for violation of such a provision "when Congress has not provided for judicial scrutiny of this aspect of the interbranch relationship," *id.* at 319. The same logic applies to the IG Act's notice provision.

If the Court construes the IG Act as preventing the President from removing Inspectors General until 30 days elapse from providing notice to Congress, then the IG Act unconstitutionally restricts the President's Article II removal authority. Article II of the Constitution provides that

"the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). To discharge those responsibilities, the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Pub. Acct. Oversight Bd.*, 561 U.S. 477, 513-14 (2010). Article II "establish[ed] a hierarchy—a Chief Magistrate with whom the buck stops, and below him various assistants or deputies who derive their offices from his appointment and remain subject to his superintendence. To remain accountable to the President, those officers must be removable by the President." *Slaughter*, 2026 WL 1855612, at *7 (citation omitted); *see id.* at *14 ("The President exercises general administrative control of those executing the laws and thus must be able to remove those for whom he can not continue to be responsible." (cleaned up)).

Under the Supreme Court's precedents, the President must have unfettered authority to remove Inspectors General. Inspectors General undoubtedly assist the President in executing the laws by leading their Offices of the Inspector General (OIGs) and executing the IG Act by conducting investigations and audits of their departments' activities. *See* 5 U.S.C. §§ 402, 404, 406. Inspectors General are thus also officers of the United States because they "occupy a continuing position" and "exercise[] significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 585 U.S. 237, 245 (2018) (cleaned up).

Under Article II, the general rule is "the President's unrestricted removal power" over federal officers. *Seila Law*, 591 U.S. at 215. The Supreme Court has applied an exception to this rule "for inferior officers with limited duties *and* no policymaking or administrative authority," *id.* at 218 (emphasis added), but the position of Inspector General exceeds the bounds of this exception. Inspectors General have vast duties, not "limited duties." *Id.* Plaintiffs were

responsible for conducting audits and investigations of their agencies' activities, 5 U.S.C. § 402(b), and had significant authority to obtain evidence, including by subpoena and taking testimony, *id.* § 406(a). By Plaintiffs' own account, their work collectively had monetary impact of over $100 billion. *See* Compl. ¶¶ 15, 17, 19, 20, 22, 24, 26, 28. They had administrative authority to lead OIGs with hundreds of employees, *id.*, and to set their offices' priorities, 5 U.S.C. § 404(a). They had the policymaking authority "to provide policy direction" for their offices' operations. *Id.* § 404(a)(1). And although they did not *set* the policies for their respective departments, they were charged with "recommend[ing] policies for" those departments, *id.* § 404(a)(3), (4).

Because the President's "assistants or deputies who derive their offices from his appointment and remain subject to his superintendence . . . must be removable by the President," 2026 WL 1855612, at *7, any exception allowing removal restrictions for inferior officers must be construed narrowly. Few officials in the Executive Branch play a more vital role in ensuring the faithful execution of the laws than the Inspectors General who ferret out fraud, waste, abuse, and other misconduct. Yet under Article II, it is *the President*'s "constitutional obligation 'to take care that the laws be faithfully executed.'" *Id.* at *5 (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926)). Thus, when Inspectors General help ensure the faithful execution of the laws, they are "exercising [the President's] power" and cannot do so "against *his* wishes." *Id.* at *9.

Plaintiffs have indicated that they intend to seek back pay. *See* Joint Status Report 1, ECF No. 58. To do so, they would need to identify an applicable waiver of sovereign immunity because "the United States, as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). Defendants are unaware of any such waiver. *Cf. Hubbard v. EPA*, 982 F.2d 531, 535-39 (D.C. Cir. 1992) (en banc); *Beberman v. Blinken*, 61 F.4th 978, 982 & n.1 (D.C. Cir. 2023).

Dated: August 3, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
Chief Litigation Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*